148    APPELLATE COURTS OF ILLINOIS.

Park Ave. Church v. Park Ave. Colored Church, 244 Ill. App. 148.

## Park Avenue Methodist Episcopal Church, Appellant, v. Park Avenue Colored Methodist Episcopal Church et al., Appellees.

## Gen. No. 31,170.

1. FORECLOSURE OF MORTGAGES—*when bill to foreclose after default in purchase price not premature.* A bill for the foreclosure of a trust deed against church property after default in purchase price payments was not filed prematurely but stated a good cause of action, upon facts showing that the notes sued on and secured by the trust deed were given for part of the purchase price and that defendant had admitted that title had passed to it by demanding the warranty deed promised it upon completion of certain payments as also by its answer claiming title through technical delivery of the warranty deed while yet in escrow.

2. ESCROWS—*delivery of warranty deed in trust for grantee under escrow agreement as passing title to grantee.* Under an escrow which does not preclude supposing that a trustee was holding a warranty deed in trust for a grantee and the trust deed securing unpaid amounts of the purchase price for the grantor, upon the grantee completing specified payments the title will be considered as passing to the grantee through technical delivery of the warranty deed and to the trustee by the trust deed.

3. FORECLOSURE OF MORTGAGES—*when grantor and grantee of property deemed to have intended foreclosure of trust deed upon default of payment of purchase price.* If the whole course of dealing between a grantor and grantee shows their mutual recognition of the latter's debt for part of the purchase price of church property, and that the debt was secured by the property purchased, and that upon default the grantor could take the property, equity will consider that this intent of the parties must be carried out by foreclosure of the trust deed upon default thereon.

4. ESCROWS—*when performance of conditions under which deed held by trustee deemed followed by delivery of deed to grantee.* Under an escrow that a grantor's warranty deed, held in trust, should pass to the grantee upon payment of $1,200, the payment of that sum may be considered as followed by a delivery of the warranty deed to the grantee, thereby making it possible for the grantor to enforce his trust deed by foreclosure upon default thereon.

5. TENDER AND DEPOSITS IN COURT—*when tender of defaulted payment insufficient after acceleration of debt by institution of suit.* A

tender by defendant of a defaulted payment on a purchase price trust deed after suit was begun to collect the whole remainder due by such default, is not sufficient tender to halt the foreclosure of the trust deed.

Appeal by plaintiff from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Reversed and remanded with directions. Opinion filed April 6, 1927.

N. M. JONES, for appellant.

DENISON, WATKINS & WHITE, for Park Avenue Colored Methodist Episcopal Church, appellee; CALDWELL WATKINS, of counsel.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This is a suit begun by a bill of complaint filed in the circuit court of Cook county, on June 10, 1925, by the complainant, the Park Avenue Methodist Episcopal Church, against the defendant, the Park Avenue Colored Methodist Episcopal Church, and others, to foreclose a trust deed on certain real estate for the liquidation of a principal indebtedness of $11,000, represented by certain promissory notes, signed by the defendant, Park Avenue Colored Methodist Episcopal Church. On July 10, 1925, the defendant filed an answer and cross-bill. Other pleadings were filed, and on October 26, 1925, the matter was referred to a master in chancery to take proofs and make a report. On March 4, 1926, the master filed his report, finding a balance of $12,250.16, which included solicitor's fees of $500, due from the defendant, the Park Avenue Colored Methodist Episcopal Church, to the complainant, the Park Avenue Methodist Episcopal Church, and that the complainant had a valid and subsisting lien on the premises in question for that amount, and was entitled to foreclosure of said trust deed to satisfy its lien.

Objections were filed to the master's report, and, subsequently, he made and filed a supplemental report, which added some findings to his original report, but did not materially change the recommendations as to the decree.

On March 26, 1926, exceptions to the master's report having been filed and considered, a decree was entered that the bill of complaint be dismissed on the ground that it was prematurely filed. This appeal is from that decree.

The evidence shows, in part, the following:

On October 29, 1918, a written contract was entered into between one Bishop Randall A. Carter, as vendee, and the Park Avenue Methodist Episcopal Church, as vendor, for the purchase and sale of certain church property, for the sum of $25,000. That contract contained the following:

"Said purchaser has paid Three Hundred ($300.00) Dollars as earnest money to be applied on such purchase when consummated, and agrees to pay within five (5) days after the title has been examined and found good, or accepted by him, said insurance premi um and the further sum of Seven Hundred ($700.00) Dollars, at the office of E. Woltersdorf & Co., Chicago, provided a good and sufficient general Warranty Deed conveying to said purchaser a good and merchantable title to said premises shall then be executed and placed in escrow with Chicago Title & Trust Co. till $12,000 is paid. The balance to be paid as follows: $1,000 in 90 days; and $2,000 one year from date of deed, and $3,000 each year thereafter for seven (7) years, all from date of deed, with privilege of pre-paying one or more of said notes on any interest day on thirty (30) days written notice, with interest from the date of deed, at the rate of six per cent (6%) per annum, payable semi-annually, to be secured by the purchaser's notes and mortgage, or trust deed, of even date herewith on said premises."

On December 2, 1918, the complainant executed a warranty deed of the premises in question to the defendant.  On the same date, the defendant made and delivered to the complainant nine principal promissory notes, aggregating $24,000, as evidence of the balance of the purchase price for the premises in question.  On the same date, the defendant executed and acknowledged a trust deed conveying the property in question to the Chicago Title & Trust Company, as trustee, in trust, to secure the nine promissory notes in question, aggregating $24,000.  The trust deed recited that they were given to evidence and secure the purchase money.  Two days later, on December 4, 1918, the complainant and the defendant entered into an escrow agreement which, together with the warranty and trust deeds, was deposited with the Chicago Title & Trust Company.  The escrow agreement contained, in part, the following:

"The accompanying W. D. & T. D. are deposited with the Chicago Title & Trust Company to be delivered by it only on the joint order of the undersigned, or their respective legal representatives or assigns."

In the spring of 1922, owing to difficulties which the defendant found in making payments according to the terms of the notes, a new agreement, in the nature of an extension agreement, was entered into, whereby the dates and amounts of payment were somewhat changed; and although the payments to be made thereafter were not made punctually and in entire accord with the extension agreement, they were accepted by the complainant.

Up to March 4, 1925, $14,000 had been paid by the defendant to the complainant on the principal of the notes numbered 1 to 5 inclusive, and $1,000 on note numbered 6, and all the interest coupons on the canceled notes, and on notes numbered 6, 7, 8 and 9.

The master found that default was made in the payment of $1,000 under the extension agreement, and

that the default still continued. He also found that, including $70 for an abstract made by the Chicago Title & Trust Company, and solicitor's fees of $500, there was due to the complainant a total sum of $12,250.16 and costs.

On March 17, 1925, the defendant wrote to the complainant that it had, under the escrow agreement with the Chicago Title & Trust Company, "paid to your church an amount which entitled them to a Warranty Deed and a Trust Deed delivered to you covering the balance of purchase price. We are ready to terminate the escrow agreement, and by this letter are requesting your church to do so."

On June 2, 1925, the defendant wrote to the complainant, stating that there was payable to it that day $1,000, with interest of $330, as "part payment by us for the purchase of Park Avenue Methodist Episcopal Church." That letter contained, also, the following: "We are prepared to pay this amount, and with such payment your church shall deliver to us our Warranty Deed on the said church premises, and retain the Trust Deed as part of such purchase price, according to the escrow agreement deposited with the Chicago Title & Trust Company, as we have heretofore advised. That there may be no misunderstanding, we want the Warranty Deed, which was placed in escrow when the property was purchased, as under the law such an escrow was a delivery of such deed."

At the opening of the hearing before the master, on November 6, 1925, counsel for the defendant, the Park Avenue Colored Methodist Episcopal Church, stated that he "hereby tenders" to the complainant $1,000 due under the trust deed and subsequent agreements and $660 accrued interest on the balance of $11,000, due, but not payable, under the trust deed and agreements, and further tendered sums equal to the clerk's costs, sheriff's fees, attorney's fees and

master's and stenographer's fees that may have been incurred up to date.

Replying to that statement, counsel for the complainant stated that the complainant claimed that the full amount mentioned in the bill of complaint upon all of the four notes which were still unpaid was then, together with interest, due and, also, costs and solicitor's fees, as set forth in the bill of complaint, and that on behalf of the complainant "I decline to accept the money at present in court, unless the full amount is paid."

On December 9, 1925, while the matter was on hearing before the master, by agreement of the parties, the warranty deed was taken out of escrow and delivered to the defendant by the complainant, and the trust deed was taken out of escrow and delivered to the complainant, and it was agreed that the delivery of the warranty and trust deeds should in no way affect the rights of either of the parties, and that the deliveries were made without prejudice to any of the rights of the respective parties.

In the original answer of the defendant to the bill of complaint, which answer was filed on July 10, 1925, it was stated by the defendant that "Delivery of the Warranty Deed by the complainant to the Chicago Title & Trust Company in escrow was a delivery to the defendant church, and such deed and the premises described therein are the property of the defendant church. The defendants deny the right of the Chicago Title & Trust Company to deliver said Warranty Deed to anyone except the legal owner, the said defendant church, and the bill to foreclose admits the delivery and ownership of said Warranty Deed, without which complainant would be without warrant, right or remedy to file said bill of foreclosure, and in doing so admits the defendant church's title, delivery and possession."

On March 26, 1926, the defendant, pursuant to leave of court, filed an amendment to its answer striking out certain statements therein, concerning the execution and deposit in escrow of the warranty deed and trust deed, and inserting in lieu thereof the averment that the deposit of the warranty deed with the Chicago Title & Trust Company was not a delivery of the warranty deed, or a transfer of title to the defendant, and that there was no delivery until the warranty deed, on December 9, 1925, was delivered upon the hearing before the master. The amendment added also the averment that the defendant denied the right of the Chicago Title & Trust Company to deliver the warranty deed to anyone except on an order of the complainant and the defendant, who signed the joint order in escrow.

The record shows that the defendant had occupied the property in question since the time of the execution of the contract of sale.

It will be seen from the foregoing that the chief question is whether, at the time of the filing of the bill to foreclose, the complainant was entitled to proceed in equity to foreclose the trust deed, that is by equity proceedings to sequester the property in question for the payment of the balance of the indebtedness. The indebtedness and the default in payment being admitted as existing at the time the bill was filed, we are of the opinion that the complainant had the right to proceed as it did to have the property in question appropriated for the payment of the balance of the indebtedness. There would seem to be a good many reasons in support of that conclusion.

The original contract of sale of October 29, 1918, shows that it was the intention of the parties that the warranty deed should be executed and placed in escrow with the Chicago Title & Trust Company until $12,000 of the purchase price was paid. It also shows that both parties understood that the property was

sold for the contemplated price, and that the defendant was the purchaser, and, in equity, at least, the owner of the property in question, and that it became the debtor to the complainant for the balance of the purchase price, which was to be represented by certain notes, and that those notes were to be secured by a mortgage, or trust deed. The defendant took possession of the property and, presumably, has remained there ever since.

In the original answer of the defendant to the bill of complaint, the defendant stated affirmatively that "Delivery of the warranty deed by the complainant to the Chicago Title & Trust Company in escrow was a delivery to the defendant church, and such deed and the premises described therein are the property of the defendant church." In that same answer, the defendant denies the right of the Chicago Title & Trust Company to deliver the warranty deed to anyone except the legal owner, the defendant church, and "admits the defendant church's title, delivery and possession." It is true that afterwards, on the day the decree was entered, the defendant filed an amendment to its answer, and undertook to dispute the delivery of the warranty deed and transfer of title to the defendant, stating that the title to the property still remained in the complainant until the deed was delivered on December 9, 1925, on the hearing before the master.

In the letter of June 2, 1925, written by the defendant to the complainant, the defendant used the following language: "That there may be no misunderstanding, we want the warranty deed, which was placed in escrow when the property was purchased, as under the law such an escrow was a delivery of such deed." Further, on December 9, 1925, while the matter was on hearing before the master, by agreement of the parties, the warranty deed was taken out of escrow and delivered to the defendant by the complainant, and the

156    APPELLATE COURTS OF ILLINOIS.

Park Ave. Church v. Park Ave. Colored Church, 244 Ill. App. 148.

trust deed was taken out of escrow and delivered to the complainant.

Considering the contents of the original contract of October 29, 1918; that the notes were given for part of the purchase price; that the defendant was actually in possession of the property; that the warranty deed and trust deed were deposited with the Chicago Title & Trust Company, "to be delivered by it only on the joint order of the undersigned"; that the defendant, on June 2, 1925, wrote to the complainant that the escrow was a delivery of the warranty deed; that as in the original answer of the defendant on July 10, 1925, it was affirmatively stated by the defendant that a delivery of the warranty deed and the trust deed in escrow was a delivery to the defendant; that that answer stood unchallenged throughout all the hearings before the master, and was not modified until March 26, 1926, the day the decree was entered, we feel bound to conclude, this being a proceeding in equity, and the complainant having the right, upon the defendant's default, to sequester the property in question for the payment of the indebtedness; that the bill of complaint was not filed prematurely, but, on the other hand, stated a good cause of action, and justified the recommendation of the master that the property be sold for payment of the debt. Further, there are no words in the escrow agreement which preclude the inference that it was mutually intended that the Chicago Title & Trust Company, as trustee, should hold the warranty deed in trust for the defendant and the trust deed in trust for the benefit of the complainant; and that as a result, in equity, the title would be considered as passing to the defendant, through the giving of the warranty deed, and then passing to the trustee by the trust deed, as the result of its delivery by the defendant to the Chicago Title & Trust Company, holder of the escrow. Further, what the parties intended, equity considers as done. The whole

history of the protracted relations of the parties demonstrates a mutual recognition of the debt and that it was secured by the property in question and that upon default, proceedings could be begun to take the property, according to the terms of the trust deed.

Further, taking the words of the original contract of purchase, of October 29, 1918, "provided a good and sufficient general warranty deed conveying to said purchaser a good and merchantable title to said premises, shall then be executed and placed in escrow with the Chicago Title & Trust Company till $12,000 is paid," and considering them in conjunction with the phraseology of the escrow agreement, "to be delivered by it only on the joint order of the undersigned, or their respective legal representatives or assigns," the most that could reasonably be claimed by the defendant, apart from all the other evidence, would be that the warranty deed was not delivered, or could not be considered as delivered, until the defendant had paid $12,000 of the purchase price; and as the evidence shows that that amount had been paid prior to the institution of this suit, it follows that the only condition preventing delivery had been satisfied before the suit was begun, and, accordingly, as a consequence, in equity, the warranty deed must be considered as the property of the defendant and as having the same effect as a physical delivery to the grantee. If, as the court said in *Weber v. Brak,* 289 Ill. 564, 567, "The intention of the grantor in a deed concerning the matter of delivery is the controlling element which determines whether the deed has been delivered," then it is quite obvious that the words of the original contract, those of the escrow agreement and the other evidence, show that there was, even at law, a sufficient delivery when the payments by the defendant amounted to $12,000.

It is also urged for the defendant that at a hearing before the master it made a sufficient tender of what

was due.    That is not tenable.    At that time a suit was then pending, owing to defendant's default, and all that was tendered was the amount that was due immediately before the suit was begun, and certain fees and costs; whereas, the institution of the suit put the defendant in default as to all that remained of the principal indebtedness, and that amount was not offered or tendered.

The decree, therefore, will be reversed and the cause remanded with directions to enter a decree of foreclosure in accordance with the recommendations of the master.

*Reversed and remanded with directions.*

O'CONNOR and THOMSON, JJ., concur.