(No. 41073.-)

THE PEOPLE *ex rel.* The County Collector of Cook County, Appellee, *vs.* JERI, LTD., Appellant.

*Opinion filed May 29, 1968.—Rehearing denied Sept. 24, 1968.*

BLAIR & BUYER, of Chicago, (ALLAN L. BLAIR and BRUCE M. BUYER, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (JOHN J. O'TOOLE, DONALD J. VEVERKA, Assistant Attorneys General, and EDWARD J. HLADIS, Chief of Civil Division, and RONALD BUTLER, Assistant State's Attorney, of counsel,) for appellee.

HAROLD J. GREEN and HOWARD HARRIS, both of Chicago, for *amicus curiae*.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Petitioner, Jeri, Ltd., purchased certain real estate in Cook County at a tax sale. The time for redemption having expired and all the delinquent taxes and assessments having been paid by the petitioner, it applied for issuance of a tax deed. The trial court found that petitioner had fully complied with all of the provisions of the Revenue Act entitling it to the tax deed but one: petitioner refused to transcribe the evidence relating to the findings of the trial court and to attach such transcript as part of the court order. This requirement was imposed by a 1967 amendment (House Amendment No. 1 to Senate Bill 472) to section 266 of the Revenue Act which provides in pertinent part: "The court

shall insist on strict proof of notice and, in the event due diligence is claimed, shall inquire into the facts of diligence, and shall require further that the evidence relative thereto be transcribed in all cases including default matters, and such transcript shall be made a part of the court order." (Ill. Rev. Stat., 1967, chap. 120, par. 747.) Since petitioner failed to comply with this provision the trial court denied its request for issuance of a tax deed. Petitioner appeals that decision directly to us raising the constitutional arguments that the amendment in question violates section 13 of article IV of the Illinois constitution (1) because it was not read three different times in each House of the General Assembly, and (2) because the subject matter of the amendment dealing with section 72 of the Civil Practice Act was not expressed in the title of the bill; petitioner additionally contends that the amendment violates the separation-of-powers clause of article III of our constitution because it infringes on the power of the judiciary to regulate the day-to-day functions of courtroom procedure.

On April 24, 1967, Senate Bill 472 was reported from the Senate entitled "A BILL FOR AN ACT to amend Section 253 of the 'Revenue Act of 1939' * * *." That section set out the time limit and conditions for redemption of land sold by the county to satisfy delinquent taxes. Before section 253 was amended by Senate Bill No. 472, it provided, in substance, that an owner could redeem his land which had been sold at a tax sale within two years of the sale if he paid to the county clerk (1) the sale price paid by the tax purchaser, (2) an amount based on the penalty bid at the tax sale, (3) all taxes accruing after such sale which were paid by the tax purchaser, and (4) a 7% annual penalty upon all such subsequent taxes paid by the tax purchaser. Senate Bill No. 472 changed the last two redemption requirements of section 253 by requiring the owner to pay the clerk only those subsequent taxes (and 7% penalty thereon) which were paid by the tax purchaser after they

had become delinquent or after the tax purchaser had filed for a tax deed. The brief of *amicus curiae* in this cause suggests that the purpose and effect of Senate Bill 472 was to protect the redeeming owner of property sold at a tax sale from the additional burdens created by tax buyers who pay nondelinquent taxes thereby causing the 7% penalty to be imposed on the owner who seeks to redeem his property. This seems a logical explanation of the legislative intent behind Senate Bill 472.

House Amendment No. 1 to Senate Bill 472 was introduced during its second reading in the House. This amendment was read twice in the House and never read in the Senate. It made no change in the above-discussed amendatory provision of Senate Bill 472 affecting section 253 of the Revenue Act but it added amendments to sections 235a and 266 of the Revenue Act. The title of Senate Bill 472 was accordingly changed by House Amendment No. 1 to read "A BILL FOR AN ACT to amend sections 235a, 253 and 266 of the 'Revenue Act of 1939' * * *." Only minor changes were effected by House Amendment No. 1 in section 235a of the Revenue Act which deals with the duty of the county collector to annually publish an advertisement giving notice of the intended application for judgment for sale of lands, the right of the owner to seek redemption within two years of the tax sale, and the right of the tax purchaser to acquire a tax deed to the property within three years of the tax sale. The only other change made by House Amendment No. 1 upon section 235a is a statutory codification of our pronouncement that section 72 of the Civil Practice Act applies to tax deed proceedings. See, *e.g., Urban* v. *Lois, Inc.,* 29 Ill.2d 542, 550.

The change wrought by House Amendment No. 1 in section 266 of the Revenue Act which is the central issue of this appeal is the requirement that the trial court in a proceeding for issuance of a tax deed shall require that evidence relative to the giving of notice be transcribed and

made part of the record in the event substituted service based upon the exercise of due diligence to effect personal service is claimed. Petitioner asserts that this amendment is void because it was not read on three different days in each House as required by section 13 of article IV of the Illinois constitution. It is the rule in this State, however, that amendments which are "germane" to the general subject of the bill as originally introduced may be made without the proposed Act, as amended, having to be read on three different days in each house. (*People* v. *Hightower*, 414 Ill. 537, 541; *Giebelhausen* v. *Daley*, 407 Ill. 25, 46; *People ex rel. Brady* v. *LaSalle Street Trust and Savings Bank*, 269 Ill. 518, 522; *People ex rel. Beardsley* v. *Wallace*, 70 Ill. 680, 681.) Whether or not an amendment to a proposed bill in the legislature is germane to the original subject matter of the proposed bill is a matter which necessarily rests on the facts in each case. Petitioner relies on *Giebelhausen* to support its contention that House Amendment No. 1 was not germane to Senate Bill 472, and the State cites *LaSalle Street Bank* for the proposition that House Amendment No. 1 was germane to the subject matter of the Senate bill.

In *Giebelhausen,* the original Act introduced in the General Assembly was Senate Bill No. 687 which was entitled "A Bill for an act making an appropriation to the Department of Revenue for refunds in accord with the provisions of the Motor Fuel Tax Law * * *." It purported to dispose of $10,750,000 for the purpose of reimbursing persons who had overpaid motor fuel taxes. The bill passed in the Senate after three readings, but on the second reading in the House, House Amendment No. 1 was made striking out the *entire substance* of the bill leaving only the number and the words "A Bill", and inserting a new title which read "An Act making appropriations for certain ordinary and contingent expenses of this State in connection with tax assessments." An appropriation to the Department of Revenue

of $632,625 for the property-tax division was substituted for the bill's original provisions. The court in *Giebelhausen* held the House amendment was not germane to the subject matter of the original Senate bill and consequently invalid since it was not read three times in each House. The court noted: "Thus, a bill, with the title and subject matter originally relating to an appropriation to the Department of Revenue for refunds, authorized by the Motor Fuel Tax Act, passed after three readings in the Senate and one reading in the House, was changed on the second reading in the House to relate to an appropriation to pay the salaries of the officers created by the amendatory act, discussed above. * * * The object of the constitutional provision is to keep the members of the General Assembly advised of the contents of the bills it is proposed to enact into laws, by calling them specifically to their attention three several times, on three different days. For this court to hold a new bill, which bears no similarity to that originally introduced, except only the appropriation for a different purpose, is *germane* to the original, would render this clause of the constitution nugatory by construction, and invite disregard of its salutary provisions. We think there was a complete substitution of a new bill under the original number, dealing with a subject which was not akin or closely allied to the original bill, and which was not read three times in each House, after it had been so altered in clear violation of section 13 of article IV of the constitution." 407 Ill. at 46-48.

In the *LaSalle Street Bank* case the original House Bill No. 522 was introduced for the purpose of amending the Act concerning corporations with banking powers (the Banking Act) and it was entitled "An Act to amend sections 10 and 11" of that Act, *etc.* By amendment the title was changed to read, "A Bill for an act to amend sections 4, 5, 10 and 11" of that Act, *etc.* The latter Act as passed reveals that the amendment to section 10 changed the maximum ratio between loans to any one borrower and total

capital, and prohibited loans to officers without approval as to security and amount by the directors of the bank. The amendment to section 11 expanded the powers of the Auditor to proceed in equity to rectify irregularities discovered as a result of bank examinations. The amendments to sections 4 and 5, added after the second reading of the bill in the house, were: to section 4—to require that each director own at least ten shares of the capital stock; to change the oath of directors to include a statement that they did own such ten shares, and to include in the oath a statement to the effect that directors would not "willingly permit" the violation of the provisions of the Act; to require regular monthly meetings of the directors; and to impose criminal penalties upon directors for knowingly making false statements to bank examiners; to section 5—to empower the Auditor to withhold a certificate to begin business when he was not satisfied with the character and standing of the director or officers, or had reason to believe that the bank was organized for a purpose other than that contemplated in the Act. Finding a marked similarity between the facts of *LaSalle Street Bank* and the instant case we regard the remarks of the court in that case as instructive here: "The amendments made in the body of the act in the passage of the bill through the two houses were material and substantial, but the act did not thereby lose its identity as House Bill No. 522 for the amendment of the Banking act. The amendments were all germane to the act and such as might properly be introduced. Amendments, whether important or unimportant, whether to the title or body of the act, if they are germane to the act cannot be regarded as destroying its identity. The object of the provision requiring acts to be read on three different days is to give time for deliberation but not to deprive of the opportunity of amendment, which is the result of deliberation." 269 Ill. at 522.

Here as in *LaSalle Street Bank*, the amendatory provisions of the originally introduced bill were retained

through the final version of the adopted bill. In both cases additional amendments were incorporated affecting other sections of the same Act. In *LaSalle Street Bank* the original amendments to sections 10 and 11 of the Banking Act were designed to deter activities that threatened the impairment of bank capital, and the later added amendments to sections 4 and 5 of that Act were intended to insure director loyalty and involvement in bank affairs. In the instant case the purpose of Senate Bill 472 was to prevent the creation of unnecessary financial burdens upon redeeming owners of land sold in a tax sale. House Amendment No. 1 to Senate Bill 472 amended other sections of the same act to afford additional protection to the owner of property sold at a tax sale by (1) the statutory acknowledgement that relief from an order directing issuance of a tax deed could be given under section 72 of the Civil Practice Act, and (2) by requiring that a petitioner for a tax deed who claimed to have exercised due diligence to locate the property owner as a prelude to substituting a method of notice other than personal service must transcribe the evidence relative thereto and append the transcript to the court order. We believe it clear that House Amendment No. 1 was germane to the subject matter of Senate Bill 472 for both have a common goal—protection of the property owner in tax-sale and tax-deed proceedings—and all of the amended statutory provisions are related thereto. There was thus no necessity to read House Amendment No. 1 on three different days in each House. See *Giebelhausen* v. *Daley*, 407 Ill. 25, 47.

The petitioner's second contention is that Senate Bill 472, as amended, was invalid because the title of the Act does not reflect the fact that the Act deals with section 72 of the Civil Practice Act. We need not consider the merits of this contention, however, because even if the provisions of Senate Bill 472 dealing with section 72 were void as a result of the absence of reference to that statute in the

title, (a matter upon which we indicate no opinion) this would still not obviate the requirement that petitioner attach a transcript to a court order for a tax deed, since our constitution provides: "if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void *only as to so much thereof as shall not be so expressed.*" (Emphasis added.) Article IV, section 13.

Petitioner's final contention is that the amendment to section 266 of the Revenue Act, relied upon by the trial court in refusing to order the issuance of a tax deed, is unconstitutional because it infringes upon the power of the judiciary by attempting to regulate the judicial procedures involved in granting a tax deed to a tax purchaser. The petitioner cites *Agran* v. *Checker Taxi Co.,* 412 Ill. 145, where we held unconstitutional an amendment to the Civil Practice Act which provided that no *ex parte* action could be taken to dismiss a case for want of prosecution until every attorney of record had been notified at least five days in advance that such action was being contemplated. This court noted in that case: "The General Assembly has power to enact laws governing judicial practice only where they do not unduly infringe upon the inherent powers of the judiciary. (*People* v. *Callopy,* 358 Ill. 11.) Were this not true, a basic tenet of our democratic form of government would be destroyed, and the relevant constitutional provisions rendered nugatory. It is the undisputed duty of the court to protect its judicial powers from encroachment by legislative enactments, and thus preserve an independent judicial department." 412 Ill. at 149.

There is, however, a substantial difference between that situation and this, for proceedings relating to tax sales, redemptions and deeds are entirely statutory in origin and nature. The section 266 amendment, requiring attachment to the order for deed of a transcript of the evidence upon which the trial court based its findings that due diligence had been exercised by petitioner as a prelude to substituted

service, is but one of many statutory conditions upon which issuance of a tax deed is predicated. This requirement does not purport to direct how a court should decide cases nor does it circumscribe the power of a judge to determine facts and apply the law to them. (See *People* v. *Spegal,* 5 Ill.2d 211, 220.) All that is required by the amendment to section 266 is that certain evidence relative to the court's findings be transcribed, and such a rule of procedure may afford some additional protection to property owners in minimizing the possibility of fraudulent practices in tax-deed matters. In *Urban* v. *Lois, Inc.,* 29 Ill.2d 542 we said in this regard: "[T]he existence of an opportunity for fraud must be conceded * * * especially * * * when the testimony relating to service is based upon an *ex parte* affidavit. This opportunity can, however, be remedied by diligent cross-examination by the state's attorney, and the clear availability of relief under section 72." (29 Ill.2d at 550.) We view the amendment to section 266 now attacked by petitioner as a proper method of implementing our suggestion in *Urban* in those cases where personal service upon the owner of land sold at a tax sale is not secured, and where the possibility of fraud is probably greatest.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*