(No. 54494.—

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO, Appellant, v. RUSSELL EDWIN WALKER *et al.*, Appellees.

*Opinion filed June 1, 1982.*

Liebling & Hauselman, of Chicago (Martin F. Hauselman and Patricia O'Brien Norum, of counsel), for appellant.

Legal Assistance Foundation of Chicago (James O. Latturner, of Englewood, of counsel), for appellees.

JUSTICE UNDERWOOD delivered the opinion of the court:

This case concerns the application and constitutionality of section 7 of "An Act relating to mortgages ***" (Ill. Rev. Stat. 1979, ch. 95, par. 57), which permits a mortgagor to reinstate a delinquent mortgage upon payment of the amount of delinquency and costs within 90 days of summons in the foreclosure action but prior to a final order of foreclosure. A mortgagor may cure his delinquency under the terms of the statute only once in a five-year period. In an action brought by First Federal

Savings and Loan (plaintiff) to foreclose its delinquent mortgage on defendants' home, which had been twice reinstated under this statute within the preceding two years, the circuit court of Cook County held that, by limiting the frequency with which the statute could be used, the legislature had unconstitutionally limited the inherent equitable powers of the court. Furthermore, the court held that First Federal, by allowing the second reinstatement of the mortgage, had waived its right to invoke the statute's once-in-five-years limitation in the third foreclosure action. First Federal appeals directly here under Rule 302(a)(1) (73 Ill. 2d R. 302(a)(1)).

The procedural posture of this cause is unusual because defendants filed no pleadings in the circuit court, and both the issues of waiver and constitutionality were raised by the trial court *sua sponte*. Defendant Editha Walker appeared *pro se* at most of the many hearings in this matter extending over a 12-month period. After repeated urgings by the court, she obtained counsel from the Legal Assistance Foundation and was represented at the last two hearings. Her husband, Russell Walker, entered a *pro se* appearance but did not thereafter attend the hearings. The couple was divorced during the course of the proceedings, and Editha was awarded the home. Editha Walker's attorneys, in response to the circuit court's request, filed a memorandum of law on the constitutionality of the statute, which concluded, as did the court, that the statute invaded the equitable powers of the court and violated the equal protection and due process clauses of the Illinois and United States constitutions, as well as the special legislation clause of the Illinois Constitution.

The record indicates that at various times in open court Editha Walker tendered sums to First Federal in partial satisfaction of the delinquency. At one point the tendered sum apparently equaled the total amount of the

delinquency but did not include the costs and attorney fees which the statute requires in order to reinstate. First Federal consistently refused the tendered payments and insisted on its right to foreclose. In its order, which found that the statute was unconstitutional and that First Federal had waived its right to foreclose, the court ordered that the mortgage be reinstated and that Editha Walker pay into court the delinquent sum and future installments as they became due. Attorney fees were determined to be $1,000, but no order was entered concerning payment.

Editha Walker moved to dismiss this appeal on mootness grounds, and we took the motion with the case. It is stated by her in support of the motion that should the Federal court in her presently pending bankruptcy proceedings refuse to approve a plan submitted to it, she could not meet her obligations under the mortgage. Conversely, if the bankruptcy court approves a plan, the constitutionality of the statute is irrelevant, for the bankruptcy plan will be controlling. It seems clear, however, that neither conclusion necessarily follows. The validity of the statute could conceivably be a factor in the bankruptcy court's consideration of the case before it, and the Walkers' financial situation could conceivably change between the date of the motion and future trial court proceedings. Consequently, the motion to dismiss is denied.

The trial court's conclusions that the statute is unconstitutional on due process and equal protection grounds and constitutes special legislation are without merit. Prior to adoption of the reinstatement statute, a mortgagor had, and retains, a statutory right to redeem his property from foreclosure and sale (Ill. Rev. Stat. 1979, ch. 77, par. 18), although that procedure is more costly and apparently not often used by homeowners. (*Illinois Legislative Review: Foreclosures, Redemptions, and Homeowners,* 1975 U. Ill. L. F. 335, 339, 351-52.) The right to reinstate a delinquent mortgage was unknown to the common law

and is purely statutory. (*State Farm Life Insurance Co. v. Town & Country Association* (1980), 85 Ill. App. 3d 319, 323; *Evergreen Savings & Loan Association v. Barnard* (1978), 65 Ill. App. 3d 492, 496; see also *Illinois Legislative Review: Foreclosures, Redemptions, and Homeowners*, 1975 U. Ill. L.F. 335, 337-38; 59 C.J.S. *Mortgages* sec. 495(1) (1949); see generally 4 American Law of Property, *Mortgages* secs. 16.6 through 16.10 (1952).) Enactment of the statute was apparently intended by the General Assembly as a means of affording limited relief to temporarily distressed mortgagors prior to a foreclosure sale. The once-in-five-years limitation on use of the statute represents the considered judgment of the General Assembly as to the frequency with which reinstatement without the consent of the mortgagee should be available to a defaulting mortgagor. Since the reinstatement statute is an economic regulation not affecting fundamental rights, the Constitution requires only that the challenged classifications be rationally related to a legitimate State interest. (*City of New Orleans v. Dukes* (1976), 427 U.S. 297, 303-04, 49 L. Ed. 2d 511, 516-17, 96 S. Ct. 2513, 2516-17; *Dandridge v. Williams* (1970), 397 U.S. 471, 483-85, 25 L. Ed. 2d 491, 501-02, 90 S. Ct. 1153, 1161-62.) Affording a mortgagor who finds himself in temporary economic difficulties an unprecedented opportunity to reinstate his mortgage once, but only once within a five-year period, is neither an irrational nor an unreasonable classification. Rather, it seems to us to strike a logical, albeit debatable, balance in allowing the mortgagee to exercise his right to foreclose under the terms of the mortgage when the mortgagor, through a second default, exhibits his inability to overcome financial difficulty. The distinction between those mortgagors who have previously defaulted and those who have not is not irrational; neither does it appear irrational to require that a once reinstated mortgagor exhibit his ability to meet his obligations for a five-

year period before he may again exercise a right of reinstatement. The five-year limitation constitutes neither a denial of equal protection by discriminating arbitrarily against an exclusive class of persons nor special legislation, as it does not arbitrarily confer a benefit upon an exclusive class of persons to the exclusion of those similarly situated. (*Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130; *cf. Meier v. Hilton* (1912), 257 Ill. 174, 180-81 (construing the then-existing statute providing for redemption from judicial sale).) Nor does the period of 90 days from service of summons and prior to a judgment of foreclosure in which a delinquent mortgagor must satisfy the delinquency and costs appear to be an unreasonable restraint on the exercise of the right to reinstate a mortgage. (See, *e.g., Lindsey v. Normet* (1972), 405 U.S. 56, 63-65, 31 L. Ed. 2d 36, 44-46, 92 S. Ct. 862, 869-70 (requirement of a trial, in a forcible entry and detainer action, no later than six days after service of summons unless security is provided does not offend due process clause).) It can, of course, be argued by mortgagors that the once-in-five-years limitation upon reinstatement should be once in two years and the 90 days from summons should be six months. Similarly, mortgagees may deplore the enactment of any reinstatement authority. But the fact that opinions differ as to the desirability of the legislation or the time periods specified by the legislature simply demonstrates that the periods chosen are not unreasonable. The statute provides a method by which a mortgagor may avoid foreclosure during a period of *temporary* financial embarrassment. We cannot say that the legislature was arbitrary and unreasonable in determining that the mortgagor must be able to overcome this condition within 90 days to avoid the repercussions of his default, particularly when it is considered that the right to reinstate is in addition to the right to redeem from any subsequent foreclosure and sale.

The circuit court's conclusion that the once-in-five-years limitation impermissibly interferes with the inherent powers of a court of equity misconceives both the nature of this remedy and the court's power. As earlier noted, the right to reinstate a delinquent mortgage did not exist at common law, and when a mortgagor defaulted in his payments on a mortgage which provided, as here, for acceleration of the entire debt upon default, he could redeem the mortgage prior to the order of foreclosure and sale only by paying it in full. (*E.g., Curran v. Houston* (1903), 201 Ill. 442, 445 (such a clause is "not objectionable as being in the nature of a penalty or forfeiture, but will be sustained in equity as well as at law").) Consequently, in the absence of a statute such as the one before us conferring a right to reinstate an accelerated mortgage debt after foreclosure proceedings have begun, tender of the amount of delinquency will not prevent foreclosure. (*Robinson v. Miller* (1925), 317 Ill. 501; *Park Avenue Methodist Episcopal Church v. Park Avenue Colored Methodist Episcopal Church* (1927), 244 Ill. App. 148; 59 C.J.S. *Mortgages* sec. 495(6)(b), at 796-97 (1949); *cf. Paulauskas v. Rumsas* (1971), 1 Ill. App. 3d 460, 463 (payment of delinquent sums and reinstatement of mortgage under statute abates acceleration of debt).) Therefore, even if the trial court had been correct in determining that the statute was unconstitutional, First Federal would still have been entitled to foreclosure where no defense was offered to its complaint and the entire balance and costs due on the mortgage note were not tendered.

Apparently, however, the trial court viewed the statute as enlarging its equitable powers by authorizing reinstatement but unconstitutionally invading those enlarged powers by limiting the use of the provision. The statute, however, created a substantive right unknown at common law, and the time limitation on its use is obviously an integral part of that right. As such it neither expanded nor

contracted the equitable powers of the court (see *Smith v. Toman* (1938), 368 Ill. 414, 420; *Evergreen Savings & Loan Association v. Barnard* (1978), 65 Ill. App. 3d 492, 496-97; *cf. People ex rel. County Collector v. Jeri, Ltd.* (1968), 40 Ill. 2d 293, 301-02), for even those powers must be exercised within the framework of the law (*Stone v. Gardner* (1858), 20 Ill. 304; *Evergreen Savings & Loan Association v. Barnard* (1978), 65 Ill. App. 3d 492, 497; *cf. Smith v. Toman* (1938), 368 Ill. 414). In *Stone v. Gardner* (1858), 20 Ill. 304, 309, the court, in commenting on equitable powers, said:

> "We do not know of any power existing in a court of equity to dispense with the plain requirements of a statute; it has been always disclaimed, and the real or supposed hardship of no case can justify a court in so doing. When a statute has prescribed a plain rule, free from doubt and ambiguity, it is as well usurpation in a court of equity as in a court of law, to adjudge against it; and for a court of equity to relieve against its provisions, is the same as to repeal it."

See also 30 C.J.S. *Equity* sec. 23(a), at 819, and sec. 103, at 1065-69 (1965).

*People ex rel. County Collector v. Jeri, Ltd.* (1968), 40 Ill. 2d 293, is cited in support of the argument that a court has the duty to protect its judicial power from legislative encroachment (see *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145), and that the legislature may not direct a court how to decide a case (see generally *People v. Spegal* (1955), 5 Ill. 2d 211, 220). The trial judge indicated his belief that the limitation on the frequency of use of the reinstatement right violated both of these principles. *Jeri* held that the statute which required that a purchaser at a tax sale transcribe the evidence presented to the trial court and attach the transcript as part of the court order did not violate the separation-of-powers article of the Constitution. (40 Ill. 2d 293, 301-02.) This requirement was characterized as "but one of many statutory conditions

upon which issuance of a tax deed is predicated. This requirement does not purport to direct how a court should decide cases nor does it circumscribe the power of a judge to determine facts and apply the law to them." (40 Ill. 2d 293, 302.) Similarly to *Jeri* the statute here neither directs the court how to decide a case nor circumscribes the power of the judge to determine the facts and apply the law to them. As earlier stated, absent a statutory right to reinstate, a defaulting mortgagor could avoid foreclosure only by paying the accelerated debt in full (the right of equitable redemption) or by presenting a defense cognizable in equity (*e.g., laches*, fraud, duress, estoppel, etc.). A valid defense might be presented where reinstatement rights are in issue (see, *e.g., Federal National Mortgage Association v. Bryant* (1978), 62 Ill. App. 3d 25 (payment sufficient to cure default made prior to initiation of foreclosure—mortgagee's refusal to accept an attempt to foreclose termed "overreaching"); *Paulauskas v. Rumsas* (1971), 1 Ill. App. 3d 460 (where summons was never served on administrator, court should have allowed reinstatement even though eight months after his entry of appearance and 30 days prior to entry of decree of foreclosure)), but no such defense appears in this record. We have held valid the limitation upon the frequency of use of the right of reinstatement, and in the absence of a cognizable defense, the court was bound to give effect to it.

We find no evidence that First Federal has waived its right to proceed to foreclosure. Both the mortgage instrument and the note which it secures provide that a waiver of a term on one occasion is not to be considered a waiver of that term on subsequent occasions. According to the undenied allegations of First Federal's motion for summary judgment, Walkers' mortgage was reinstated by court order under the terms of the statute on December 15, 1978, and again on August 31, 1979. After a third default in December 1979 First Federal filed this action in

January 1980. While the record does not indicate the extent to which First Federal opposed the second reinstatement, the trial court seems to have believed there was no opposition and held that by permitting the second reinstatement First Federal had waived its right to invoke the five-year limit on the statute's use in this action, and that defendants had relied upon the right to reinstate a third time. A waiver is the intentional relinquishment of a known right, and the burden of proof is upon the party claiming waiver. (*Ferrero v. National Council of Knights & Ladies of Security* (1923), 309 Ill. 476, 481; see also *Lake Shore Country Club v. Brand* (1930), 339 Ill. 504, 524-25; *Kane v. American National Bank & Trust Co.* (1974), 21 Ill. App. 3d 1046.) As we earlier indicated the reinstatement statute appears to have been intended primarily for the benefit of financially embarrassed mortgagors. To hold that a mortgagee who agrees to a second reinstatement within five years may not object to a subsequent reinstatement seems likely to preclude more than a single reinstatement during any five-year period, for mortgagees would be reluctant to risk waiving their rights to foreclose in the event of future defaults. Such holding clearly encourages foreclosures, the very result the General Assembly sought to avoid in enacting the statute. We accordingly conclude that, standing alone, the failure to foreclose on a second default does not operate as a waiver of the option to foreclose because of a later default. (4 American Law of Property, *Mortgages* sec. 16.193 (1952); *cf. Manufacturers Finance Trust v. Stone* (1929), 251 Ill. App. 414, 424 (similar result with respect to delinquencies in chattel mortgage installments).) The fact that a mortgagee has given a delinquent mortgagor another chance to make good his promises should not operate to bar recourse to foreclosure when financial difficulties continue. If defendants here did in fact rely upon an expectation that First Federal would permit further

reinstatements, a conclusion unsupported by the record, it does not appear to have been a reasonable reliance considering that the third default followed by only three months the second reinstatement. Any other conclusion than that reached here might in our judgment seriously jeopardize both the rights of creditors and joint efforts by debtors and creditors to compromise temporary financial difficulties in solutions less drastic than foreclosure.

Because defendants have filed no pleadings it would appear that plaintiff is entitled to the relief sought, unless precluded by the pending bankruptcy proceedings. Accordingly, we reverse the judgment of the circuit court of Cook County and remand the cause to that court with directions to proceed consistently with this opinion to the extent such action is not incompatible with action taken by the bankruptcy court.

*Reversed and remanded,*
*with directions.*