(No. 71157.—

JAMES W. McALISTER, Appellant, v. LARRY SCHICK, M.D., *et al.*, Appellees.

*Opinion filed February 20, 1992.*

CUNNINGHAM, J., specially concurring.

CLARK, J., joined by BILANDIC and FREEMAN, JJ., dissenting.

William T. Cacciatore, of Rockford, for appellant.

Lawrence R. Kream, of Kostantacos, Traum, Reuterfors & McWilliams, P.C., of Rockford, and William L. Barr, Jr., and Brigid M. McGrath, of Bell, Boyd & Lloyd, of Chicago, for appellees.

Saul J. Morse and Robert J. Kane, of Morse, Giganti & Appleton, of Springfield, and James R. Thompson and Calvin Sawyier, of Winston & Strawn, of Chicago, for *amicus curiae* Illinois State Medical Society.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, James W. McAlister, filed a four-count complaint in the circuit court of Winnebago County against defendants, Larry Schick, M.D., and Rockford Anesthesiologists Associated, alleging medical malpractice. Counts I and III were brought against Larry Schick, M.D., and counts II and IV were brought against Rockford Anesthesiologists Associated.

In his complaint, plaintiff stated that he was admitted to the Swedish American Hospital for treatment of a small bowel obstruction, and that he subsequently underwent exploratory laparotomy, omental biopsy, lysis of adhesions and small bowel resection. Plaintiff alleged that

defendant Dr. Schick, a member of defendant Rockford Anesthesiologists Associated, failed to inform him of the risks involved in the surgery, and failed to properly insert and monitor a right internal jugular venous catheter. Consequently, plaintiff allegedly received unspecified injuries and suffers from a right pneumothorax.

The court dismissed the complaint with prejudice for failure to comply with requirements of section 2—622 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—622). The appellate court affirmed the dismissal. (203 Ill. App. 3d 1105 (unpublished order under Supreme Court Rule 23).) Plaintiff's petition for leave to appeal to this court was allowed (134 Ill. 2d R. 315(a)).

The sole issue presented for review is whether section 2—622 of the Code is unconstitutional. This provision is applicable to "any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice." (Ill. Rev. Stat. 1987, ch. 110, par. 2—622(a).) To conform with section 2—622, the plaintiff's attorney or the plaintiff, if proceeding *pro se*, must attach to the complaint an affidavit certifying that he has consulted and reviewed the facts of the case with a health professional, who has determined in an attached report that there is "a reasonable and meritorious cause" for filing the action. (Ill. Rev. Stat. 1987, ch. 110, par. 2—622(a)(1).) If the applicable statute of limitations is near expiration or if there is a delay in receiving medical records, an extension of time is available. (Ill. Rev. Stat. 1987, ch. 110, pars. 2—622(a)(2), (a)(3).) Failure to file the required certificate "shall be grounds for dismissal under Section 2—619." Ill. Rev. Stat. 1987, ch. 110, par. 2—622(g).

Plaintiff attached to his medical malpractice complaint, filed on June 15, 1989, an affidavit stating that

he had been unable to obtain a consultation with a health professional, and could not obtain one before the expiration of the statute of limitations. Section 2—622(a)(2) of the Code "allows for a 90-day extension for the filing of the affidavits if the statute of limitations is near expiration." (*McCastle v. Sheinkop* (1987), 121 Ill. 2d 188, 190.) Plaintiff subsequently requested, and defendants agreed, to extend the required filing date an additional three months, until December 15, 1989. On December 22, 1989, when plaintiff had not submitted the mandatory affidavit and report, defendants moved to dismiss. The plaintiff then filed a written response to the motion, arguing that section 2—622 was unconstitutional. At the hearing on the motion, plaintiff also argued that the delay was excusable because of the holidays and an illness in the family of plaintiff's attorney. The trial court granted defendants' motion and dismissed the cause with prejudice. It is established that a court has discretion to dismiss a case governed by section 2—622 with or without prejudice. *McCastle*, 121 Ill. 2d at 194.

Plaintiff appealed, arguing that section 2—622 is unconstitutional because it violates section 1 of article II and section 1 of article VI of the Illinois Constitution (Ill. Const. 1970, art. II, §1; art. VI, §1) regarding separation of powers. As authority, plaintiff cited the holding of the Appellate Court, First District, in *DeLuna v. St. Elizabeth's Hospital* (1989), 184 Ill. App. 3d 802.

Plaintiff noted the similarity of *DeLuna* to the case at bar. In *DeLuna* the plaintiff brought an action for medical and hospital negligence against the defendants, but failed to attach an affidavit of merit and written report by a health professional, as required by section 2—622(a)(1) (Ill. Rev. Stat. 1987, ch. 110, par. 2—622(a)(1)). Retracing the reasoning in *DeLuna*, plaintiff contended that section 2—622 sets up a prerequisite to filing a malpractice suit which usurps the judiciary's power to hear

and decide medical negligence cases. Plaintiff argued that, as the constitution empowers the judicial branch alone to adjudicate and apply principles of law, section 2—622 directly violates the constitutional concepts of separation of powers and reservation of judicial power.

The Appellate Court, Second District, rejected plaintiff's contention, noting that, in *Bloom v. Guth* (1987), 164 Ill. App. 3d 475, it had upheld the constitutionality of section 2—622 against an almost identical argument. The court pointed out that its holding in *Bloom* was followed by the Third District in *Sakovich v. Dodt* (1988), 174 Ill. App. 3d 649, 652, and the Fourth District in *Alford v. Phipps* (1988), 169 Ill. App. 3d 845, 851. Thus, the court rejected the First District's reasoning in *DeLuna*, and affirmed the judgment of the circuit court. We accepted plaintiff's appeal in order to resolve the dispute within the appellate court as to the constitutionality of section 2—622. For the reasons set out below, we hold that section 2—622 is constitutional, and accordingly affirm the judgment of the appellate court. We point out that, concurrent with the announcement of our opinion in this cause, we are reversing the judgment of the Appellate Court, First District, in *DeLuna v. St. Elizabeth's Hospital* (1992), 147 Ill. 2d 57.

We note at the outset the strong presumption that legislative enactments are constitutional. (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 227.) Courts have a duty to sustain legislation whenever possible and to resolve all doubts in favor of constitutional validity. *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 148.

Plaintiff contends that limiting access to the courts to only those plaintiffs who have secured an affidavit of merit and written report by a health professional singles out medical malpractice plaintiffs from all other personal injury plaintiffs. In so doing, plaintiff argues, the legislature has, in effect, created a special class of plaintiffs,

and imposed on them a burden greater than on any other class, in violation of the due process clauses and the equal protection clauses of the Illinois and United States Constitutions.

In reviewing the constitutionality of section 2—622, we reject plaintiff's equal protection and due process claims, as such claims have been similarly rejected by our appellate court. (*Bloom v. Guth* (1987), 164 Ill. App. 3d 475; *Sakovich v. Dodt* (1988), 174 Ill. App. 3d 649; *Alford v. Phipps* (1988), 169 Ill. App. 3d 845.) The authorities cited applied the rational basis standard, as set out in *Bernier*, to test the constitutionality of medical malpractice legislation under guarantees of due process and equal protection. The standard is whether the provisions bear a rational relationship to a legitimate governmental interest. (*Bernier*, 113 Ill. 2d at 228.) The courts found section 2—622 to be rationally related to a legitimate purpose of the legislature—that of eliminating frivolous lawsuits at the pleading stage.

Thus, we concentrate on a determination of whether, as plaintiff alleges, section 2—622 usurps the judicial power, violating the separation of powers provisions of article II, section 1, and article VI, section 1, of the Illinois Constitution (Ill. Const. 1970, art. II, §1; art. VI, §1). Article II, section 1, of the Illinois Constitution of 1970 states that "[t]he legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, §1.) This court has historically regarded the doctrine of separation of powers as meaning that " 'the whole power of two or more of the branches of government shall not be lodged in the same hands.' " (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 58, quoting *In re Estate of Barker* (1976), 63 Ill. 2d 113, 119.) Article VI, section 1, declares that "[t]he judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts."

(Ill. Const. 1970, art. VI, §1.) "Judicial power is not defined in the Constitution, but all such power is granted exclusively to the courts." *Strukoff*, 76 Ill. 2d at 57-58, citing *People v. Jackson* (1977), 69 Ill. 2d 252, 256.

Because judicial power is reserved exclusively to the courts, this court has consistently held that the sharing or even the potential sharing of judicial power is unconstitutional. (*Bernier*, 113 Ill. 2d at 234; *Wright v. Central Du Page Hospital Association* (1976), 63 Ill. 2d 313, 322.) In *Wright* the court examined the constitutionality of the medical malpractice act (Ill. Rev. Stat. 1975, ch. 110, pars. 58.2 through 58.10), which created the requirement of a review panel, composed of a doctor, a lawyer, and a circuit judge, to hear and determine malpractice claims. The circuit judge was to preside over the hearing and decide procedural and evidentiary issues, leaving substantive issues of law and fact to be decided by the panel as a whole. Although the party was not bound by the findings of the panel and could proceed to the circuit court, he faced the possibility of paying fees and costs if he did not ultimately prevail in that court. This court found such legislation unconstitutional, holding that it "empowers the nonjudicial members of the medical review panel to exercise a judicial function in violation of sections 1 and 9 of article VI of the Constitution." *Wright*, 63 Ill. 2d at 322.

In *Bernier* this court once again addressed an attempt by the legislature to limit malpractice actions by creating a review panel of a doctor, a lawyer and a judge to determine liability and assess damages. In distinction to the review panel in *Wright*, the judicial member of the review panel considered in *Bernier* was vested with sole authority over all legal issues. Issues of fact remained to be decided by the panel as a whole. This court found that the statute in *Bernier* also violated the Illinois Constitution. The court held that the issue was not whether

the judicial member exclusively or the panel as a whole determined questions of law. Rather, the panel procedures were unconstitutional because they failed to distinguish between the functions and roles of the judicial and the nonjudicial members.

The procedures examined in *Wright* and *Bernier* differed essentially from the procedure required by section 2—622. In *Wright* and *Bernier*, the roles of the judicial and nonjudicial members of the review panels overlapped, and were at times indistinguishable. Under the procedure set out in section 2—622, on the other hand, there is no sharing of judicial power. Section 2—622 mandates that an advisory opinion, in the form of a report made by a health care professional, be attached to the complaint. The judge presumably takes the medical report into account in determining the sufficiency of the complaint. However, the judge alone has power to dismiss the cause if he finds the complaint to be insufficient.

Relying upon *DeLuna*, plaintiff asserts that when a medical professional's determination completely bars a cause of action, there is an infringement upon the judiciary's inherent power to determine whether a cause of action can be maintained. The *DeLuna* court, defining judicial power as "[t]he power which adjudicates upon and protects the rights and interests of individual citizens, and to that end construes and applies the law," stated:

> "[I]n section 2—622, the legislature unconstitutionally delegates to a professional group the function of deciding whether a plaintiff's claim should proceed to a hearing, for it is the role of the court, applying the law concerning the sufficiency of allegations in a complaint, to determine whether there is any set of facts under which the plaintiff may state a cause of action in a particular case and move on in the judicial process. *** It is one thing to re-

quire a medical malpractice plaintiff to provide expert opinion testimony at trial supporting his claim, yet quite another to give control over the ability of our courts to hear and decide medical malpractice cases to those experts." *DeLuna*, 184 Ill. App. 3d at 806-07.

Defendants criticize the *DeLuna* holding, contending that it is premised on two incorrect assumptions: (1) that the General Assembly's enactment of the pleading requirements encroaches upon judicial power and (2) that the health professional's review of a case is in itself an exercise of judicial power. Defendants point out that judicial power is coterminous with jurisdiction and that, absent a conflicting supreme court rule, it is always concurrent with the legislature's power to enact laws governing judicial practice in the exercise of the legislature's charge to determine and effectuate public policy. (*People v. Cox* (1980), 82 Ill. 2d 268; *People v. Jackson* (1977), 69 Ill. 2d 252.) The most salient example of the legislature's concurrent powers is the enactment of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 1—101 *et seq.*).

It was stated in *Strukoff* that this court possesses rulemaking authority to regulate the trial of cases, and that a conflicting statute would infringe upon the power of the judiciary. (*Strukoff*, 76 Ill. 2d at 58.) However, in this case, as in *Strukoff*, no conflict exists between a supreme court rule and the statute at issue. As we held in reversing the appellate court in *DeLuna*, 147 Ill. 2d at 71, section 2—622 is consistent with Supreme Court Rule 137 (134 Ill. 2d R. 137), which requires that, before filing a complaint, an attorney must conduct a "reasonable inquiry" into whether a claim is well-founded in fact.

In *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, the court held invalid a statute requiring the giving of a five-day notice to every attorney of record prior to an *ex*

*parte* action to dismiss a case for want of prosecution. The court further found that the legislature had intruded upon the inherent power of the court to adjudge, determine and render a judgment. *Agran*, 412 Ill. at 150.

The statute in *Agran* specified the court procedure to be followed *after* the court's jurisdiction had been properly invoked and it had begun to exercise its purely judicial duties. Here, we confront a statutory requirement affecting procedure *prior* to attachment of the court's jurisdiction. In this, section 2—622 is similar to statutes of repose or limitations governing medical malpractice suits, which have been found constitutional. *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 424; *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 313.

The doctrine of separation of powers does not contemplate that there should be " 'rigidly separated compartments' " or " 'a complete divorce among the three branches of government.' " (*Strukoff*, 76 Ill. 2d at 58, quoting *In re Estate of Barker* (1976), 63 Ill. 2d 113, 119.) Nor does the constitution forbid every exercise by one branch of government of functions which are usually exercised by another branch. (*People v. Farr* (1976), 63 Ill. 2d 209, 213, citing *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 174-75.) The separate spheres of governmental authority may overlap. (*County of Kane v. Carlson* (1987), 116 Ill. 2d 186, 208.) Legislative enactments may regulate the court's practice so long as they do not dictate to the court how it must adjudicate and apply the law or conflict with the court's right to control its procedures. (*O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 281.) This court has repeatedly recognized that the legislature may impose reasonable limitations and conditions upon access to the courts. *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 383.

The requirement that an affidavit be attached to a pleading is not new to Illinois law. In 1862 this court upheld dismissal of the defendant's plea because he had failed to submit with it an affidavit of merits, as required by the statute. (*Roberts v. Thomson* (1862), 28 Ill. 79.) The court remarked that it had no wish to exalt the "salutary rule of practice" to the "dignity of a constitutional question," but had no doubt of the legislature's competency to exact such a rule of practice. *Roberts*, 28 Ill. at 81.

In *People ex rel. County Collector v. Jeri, Ltd.* (1968), 40 Ill. 2d 293, this court rejected the contention that the statutory requirement of attaching a transcript of evidence relating to the findings of the trial court to a court order for the issuance of a tax deed constituted a legislative infringement on the power of the judiciary. The court pointed out that the requirement did not purport to direct how a court should decide cases, nor did it limit the power of a judge to determine facts and apply the law to them. (*County Collector*, 40 Ill. 2d at 302.) Similarly, section 2—622 does not direct the judge to accept or dismiss a medical malpractice complaint to which the required medical report and affidavit have been attached. The judge must still examine the facts as laid out in the complaint and determine whether the allegations are sufficient to state a cause of action. Thus, the court does not relinquish its decisionmaking authority.

The court examined another alleged legislative invasion of judiciary authority in *People v. Youngbey* (1980), 82 Ill. 2d 556, where the challenged statute required a nonwaivable presentence report in felony cases. Although the imposition of a criminal sentence is a judicial function (*People v. Phillips* (1977), 66 Ill. 2d 412), the court found that the statute at issue in *Youngbey* did not infringe upon the inherent powers of the judiciary, as it related solely to a presentencing procedure. (*Youngbey*,

82 Ill. 2d at 560.) The presentence report was found to be a useful tool for the sentencing judge, insuring that he would have all the necessary information before the sentence was imposed. (*Youngbey*, 82 Ill. 2d at 564.) Similarly, we believe that section 2—622 serves the purpose of informing the judge, who cannot be expected to have the medical knowledge of a professional in the field, of the learned opinion of a health professional with training and experience in a specialized area. Although he could recognize the elements of breach of contract on the face of a complaint, a judge without medical training might well be unable to determine that a "right pneumothorax" could be related to an "improper jugular catheterization." Thus, rather than limiting the power of a judge to determine facts, the statute helps him to understand the facts. Consequently, we find that the legislature, in enacting section 2—622, did not encroach on judicial power.

Under section 2—622, the health care professional is to make a factual determination concerning the quality of care given the plaintiff. If the health professional believes that the plaintiff was not given proper care, he states his opinion that there is a "reasonable and meritorious cause" for filing suit. The health professional offers that opinion from the point of view of a layman with a specialty in the same medical field as that of the defendant, rather than from the standpoint of a legal professional. The statute does not require that the health care professional base his opinion upon legal principles. Nor must the health professional make the ultimate decision on any facts. He simply states, based upon the assumption that the information supplied by the plaintiff is true, that, in his view, the plaintiff's cause is reasonable and has merit. Whether the information is indeed true is a matter to be decided by the court. The health care professional is not asked to give his views concerning the

outcome of the suit. Rather, he is to base his determination on a "review of the medical record and other relevant material involved in the particular action." (Ill. Rev. Stat. 1989, ch. 110, par. 2—622(a)(1).) Thus, the health professional certifies the underlying claim rather than the cause of action. It is the court's responsibility, then, to judge the legal sufficiency of the complaint. Consequently, we find that the health care professional does not exercise judicial power.

Plaintiff's final contention is that the prerequisites of section 2—622 deny him a remedy guaranteed by the Illinois and the United States Constitutions. Article I, section 12, of the Illinois Constitution provides: "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly." (Ill. Const. 1970, art. I, §12.) This court has stated that the "certain remedy" provision is merely an expression of philosophy, and does not mandate that a certain remedy be provided in any form for any alleged wrong. (*Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 424.) In *Mega* the court found that the constitutional right to a remedy was not violated by application of a four-year medical malpractice limitations period, even though its effect was to bar injuries discovered after that time. *Mega*, 111 Ill. 2d at 423-24.

We recognize that obtaining the affidavit and report of a medical care professional places an added burden on the medical malpractice plaintiff. However, the medical malpractice plaintiff already has a burden not required in other cases—that of presenting expert medical testimony at trial. We find that the benefits of preventing frivolous suits outweigh the burden on the plaintiff.

Further, the plaintiff is not required to accept the determination of a medical professional who might be hos-

tile to his claim. Just as he selects his own expert witness at trial, the plaintiff can interview any number of medical professionals before finding one who agrees with him that his case has merit.

Finally, under section 2—622(a)(2), a plaintiff unable to secure the required medical report at the time of filing his complaint because a statute of limitations would impair the action is permitted an additional 90 days to obtain the report. (Ill. Rev. Stat. 1987, ch. 110, par. 2—622(a)(2).) Here the plaintiff received two 90-day extensions, yet apparently was unable to obtain a favorable medical consultation within that time. That the plaintiff is unable to fulfill pleading requirements does not mean that he has been denied a constitutionally guaranteed remedy.

The medical malpractice plaintiff who finds the court house door locked because his complaint is not in conformity with section 2—622 need only ask a qualified health care professional for the key. By consulting with the health care professional whom he has selected, the plaintiff will have the means of ascertaining that his pleadings are factually correct. If the plaintiff cannot find at least one health care professional willing to report that the plaintiff's claim is reasonable and meritorious, it is unlikely that he will be able to fulfill the requirements of Supreme Court Rule 137, which requires the plaintiff or his attorney to certify that, "to the best of his knowledge, information, and belief *formed after reasonable inquiry*," the pleading is well-grounded in fact. (Emphasis added.) 134 Ill. 2d R. 137.

Before the medical malpractice plaintiff is entitled to a remedy, he must show the existence of a wrong. Section 2—622's requirements are simply a means of ensuring the factual validity of the plaintiff's allegations. Thus, we find that section 2—622 does not deprive the plaintiff of a constitutionally guaranteed remedy.

For the reasons stated above, we affirm the judgment of the appellate court.

*Judgment affirmed.*

JUSTICE CUNNINGHAM, specially concurring:

Although I concur with my colleagues in the disposition of the present appeal, I write separately to explain an additional basis for my agreement.

In my opinion the adjudicatory process has not yet come into play when certification is required under section 2—622. The affidavit with attached written report of a health professional is a pleading requirement. If noncompliance is not raised by the defendant, the requirement is waived.

The argument that the certification requirement violates the constitutional separation of powers is not valid because the health professional is *not* applying legal principles to the facts of a particular case. Rather, the health professional is *only* rendering an opinion which will assist the court in applying legal principles to the facts of a particular case. The health professional is not making a legal judgment but is making a professional judgment derived from the particular health professional's own training and experience.

Section 2—622 provides in part "that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action ***." (Ill. Rev. Stat. 1987, ch. 110, par. 2—622(a)(1).) The health professional who must review the medical record, in order to make a medical judgment, must also have some knowledge of the facts of the particular situation in order to render an opinion. This does not mean that the health professional is applying legal principles to the facts.

While the word "meritorious" has a legal connotation (defined as "[p]ossessing or characterized by 'merit' in the legal sense of the word" (Black's Law Dictionary 892 (5th ed. 1979)), its use in section 2—622 does not grant the health professional the power to make the final determination as to whether the cause has merit. Rather, the court makes that final determination *vis-a-vis* section 2—619 because section 2—622 provides that "[t]he failure to file a certificate required by this Section shall be grounds for dismissal under Section 2—619." Ill. Rev. Stat. 1987, ch. 110, par. 2—622(g).

Section 2—619 sets forth the provisions for involuntary dismissal and 2—619(c) permits the plaintiff to establish facts "obviating the grounds of defect" and *authorizes the court to hear and determine the same and to grant or deny the motion.* (Ill. Rev. Stat. 1987, ch. 110, par. 2—619.) It is the involuntary dismissal proceeding under section 2—619 that brings the adjudicatory or judicial function into play. Thus, it is the trial judge, not the health professional, who makes the final determination whether a cause is to be dismissed. The trial judge is merely assisted in that determination by the opinion of the health professional.

It should also be noted that section 2—622(c) provides that a certificate of a health professional is also required when the plaintiff relies on *res ipsa loquitur.* However, section 2—622(c) refers to *res ipsa loquitur* as defined in section 2—1113. Section 2—1113 provides that the court shall determine whether *res ipsa loquitur* applies and provides that the court, in making that determination, shall rely upon either the common knowledge of laymen, if it determines that to be adequate, or upon expert medical testimony.

Thus, in deciding a motion for involuntary dismissal under section 2—619, not only may the court hear and determine matters obviating the defects, but in cases in-

volving *res ipsa loquitur* the court may also determine whether the alleged malpractice is of the nature that does not require medical testimony but is within the common knowledge of laymen. It is not the health professional who makes that determination but the court, just as the court makes the determination whether the plaintiff's complaint is to be dismissed for failing to contain the necessary affidavit and accompanying health professional's report.

In summary, section 2—622 simply sets forth pleading requirements as do many other sections of the Code. The judicial function is performed under section 2—619 when the trial judge determines whether the case should be dismissed for failure to comply with section 2—622. If the required certification is not filed and the court, under section 2—619, determines that one should have been filed, the court *may* dismiss the case. That is exactly what the court is required to do at the end of the plaintiff's case at trial if the plaintiff fails to present the testimony of an expert witness to establish the applicable standard of care and its violation.

At the pleading stage, the case may be dismissed because of the plaintiff's failure to present the affidavit of the attorney and accompanying report of a health professional with the complaint. At the end of the plaintiff's case, it may be dismissed for failure to present evidence from a health professional. In neither case has a health professional usurped any judicial function, because in neither case has a health professional done anything but render an opinion. It is the plaintiff who has failed, in one instance, to plead properly, and in the other, to present the necessary evidence.

JUSTICE CLARK, dissenting:

For the reasons I stated in my dissent in *DeLuna v. St. Elizabeth's Hospital* (1992), 147 Ill. 2d 57, I respect-

fully dissent in this case. I believe that section 2—622 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—622) is unconstitutional in that it violates the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, §1).

JUSTICES BILANDIC and FREEMAN join in this dissent.