MATTHIAS STONE *et al.*, Appellants, *v.* DAVID R. GARDNER, *et al.*, Appellees.

### APPEAL FROM BOONE COUNTY COURT.

The clerk of the Circuit Court is not the proper person with whom to deposit money for the redemption of land sold under execution.

A judgment creditor intending to redeem land sold under execution against his debtor, should at the same time deliver the sheriff an execution on his judgment.

A court of equity has not power to dispense with the plain requirements of a statute.

Money to redeem land sold under execution may be paid to a deputy sheriff, or to the administrator of a sheriff who is dead, or it may be paid to the purchaser of the land.

DAVID R. GARDNER, on the 5th of May, 1857, filed his bill of complaint against the appellants and Orville S. Stevens, charging, that on the 26th of July, 1855, the Stones recovered judgment against him before a justice of the peace, on a note due May 1st, 1855, for $95.50 and costs, from which he appealed to the Boone County Court, on which, at December term, 1855, a judgment was rendered for $107.18 and costs. December 19, 1855, execution issued to Boone county, and levied by the

sheriff, H. R. Wilson, on W. hf. S. E. qr. Sec. 26, T. 44, R. 3 E., on 2nd of February, 1856, returned satisfied by sale of land to M. and M. Stone. That a sheriffs' certificate filed, showing a sale of said land to said Stones on the 26th of January, 1856, for $122.19. That on 26th of January, 1857, at 10 A. M., Gardner deposited with Whitney $134.40, for the redemption of said land from said sale, for the said M. and M. Stone. That they were then non-residents of the State ; that Daniel T. Olney then was or claimed to be their agent, and was notified by said Whitney that the money had so been deposited, but that he, Olney, acting as such agent, refused to receive it; that upon this he applied to R. D. Stanton, an attorney, to pursue some method by which he could pay up amount due and obtain release of land, and by his advice confessed a judgment in that court in favor of Martin Y. Gilbert, on the 21st of February, 1857 ; that Stanton was taken ill, and he, in ignorance of the proper mode, as the agent of Gilbert, on the 26th of April, 1857, deposited with Tisdell, the sheriff of Boone county, $140 for redemption, of which Olney was notified ; that Olney refused to receive it, saying no execution was in the hands of the sheriff prior to the expiration of fifteen months from sale ; that he afterwards called on Olney and offered to pay him considerably more than the redemption money ($50 more), but he refused to accept it; that he had conveyed the premises by warranty deed to Orville S. Stevens, June 9, 1856 ; lands worth $1,600 ; offers to pay the amount due when and where the court may order ; that said certificate is in the hands of M. and M. Stone, but he is fearful they will assign it and procure a deed from sheriff.

Answer under oath waived. Prays a preliminary injunction to restrain the assignment of certificate, and the sheriff from making a deed ; that upon payment of amount due M. and M. Stone, either on the 26th of January, 1857, or 24th of April, 1857, they or their assigns might be ordered to satisfy said certificate of sale for the benefit of complainant, or of Stevens, or of Gilbert, and if they should refuse, that the judgment and all subsequent proceedings might be set aside. Bill sworn to and injunction allowed by the judge.

May 5, 1856. Summons issued against M. and M. Stone, Olney, Tisdell, Gilbert and Stevens. No return to the summons.

Injunction, containing a summons, issued against M. and M. Stone and Olney. Served on Olney alone.

June 1, 1857. Olney's answer filed. Sets up that the sale of said land was in the mode and manner authorized by law ; that the same has not been redeemed ; that the title by virtue thereof has become divested out of said Gardner and his grantee, and

vested in the purchasers at the sale, or their assignees, and they are entitled to a deed.    Denies all fraud, etc.

June 1, 1857.    M. and M. Stone answer.    Admit the recovery of judgment as charged in bill, being for note, interest, and ten per cent. damages for delay ; that the defendant was called upon in person by the sheriff for payment of the execution, and though able to pay, he took advantage of the law's delay, and turned out to the sheriff the said land for him to levy upon and sell ; that he knew the time and place of sale and allowed his land to be sold, and that if he has failed to redeem according to law, it is his own laches ; that they resided in Milwaukee, within eight hours' ride by railroad from Belvidere, the county seat of Boone county, and such, their residence, well known to the complainant, and no reason exists why he did not come to them and pay the money ; that Olney resided in Belvidere, and deny conferring any authority upon him to waive their rights ; deny that the lands were ever redeemed according to law ; deny that they did any act depriving him of his rights, and if Gardner has lost his title, it is by his own gross *laches* and disposition to take advantage of the law's delay ; deny that there was any consideration for Gilbert's judgment, and it was intended to defraud them ; deny that Gilbert ever paid any money to redeem the land, other than the money of Gardner ; insist that Gilbert's rights are adverse to the complainant, and he should institute proceedings to enforce them and not complainant, and demur to all that part of the bill ; insist that the money, if ever paid into the hands of Whitney, was afterwards voluntarily withdrawn by Gardner, and he elected to treat that as a nullity, and to redeem the same under cover of a judgment creditor, and having so elected, he is now stopped from setting up or insisting upon any rights thereunder, and insist upon this as a bar to relief.

It was admitted by the parties that Wilson, the sheriff who made the sale, died the 20th of July, 1856 ; and letters of administration were granted on his estate the 8th of August, 1856, to Olive A. Wilson and R. A. Blanchard.

After the cause, the case was argued and submitted to the court, and taken under advisement.

The complainant's counsel having verbally notified the defendants' counsel, since the cause was submitted, that he intended to file amendments to the bill, now produced an amendment, and offered to file the same under leave of the court, to which defendants objected ; court, after argument, allowed amendment to be filed, which is as follows :

" And your orators further show unto your honor that said

sale of said land, made by the said H. R. Wilson, sheriff, under said execution, was invalid in these particulars, because the said land so sold by him, was, at the time of sale, of the value of sixteen hundred dollars, largely exceeding the amount of the said execution, and was susceptible of division to advantage, but, in fact, was not offered by said sheriff, at said sale, in smaller parcels, nor was any bid asked for or permitted for a less amount than the entire eighty acres, but the whole undivided eighty acres was offered at said sale at first, and bid in by the plaintiffs in execution."

Answer to amendments, filed same day, denies that the sale was invalid for reason alleged, that the land is described in complainant's deed as one entire lot of eighty acres — is used as a farm — was not susceptible of division to advantage, and neither admits nor denies that the lands are worth sixteen hundred dollars, or whether the whole eighty acres were, in the first instance, set up and offered for sale.

General replication to answers to bill and amended bill.

The decree of the court concludes as follows:

" And it further appearing by said bill of complaint, that said complainants are ready and willing, and therein and thereby tender to the said Matthias and Marvin Stone, such sum of money as may be due upon said sale, and the certificate thereof, on file in the recorder's office of said county, when and where this court may order and direct. It is therefore considered, adjudged and decreed, that the said complainants do, on or before the 14th day of October next ensuing, tender to the said Matthias and Marvin Stone, or their agent, Daniel T. Olney, or solicitor, Lewis W. Pray, the full sum of one hundred and twenty-two dollars nineteen cents, with interest thereon at ten per cent. per annum, from the 26th day of January, 1856, until the day of the date of such tender. And in case the said Matthias and Marvin Stone shall accept said sum so tendered, then that they, said Matthias and Marvin Stone, shall release, and discharge, and acknowledge payment, of the sum expressed in said sheriff's certificate, now on file and recorded in book number two of sheriff's certificates, page 174, in the recorder's office of Boone county, and the said sheriff's certificates, and all rights thereunder, shall be deemed null and void. And in case the said Matthias and Marvin Stone shall refuse to accept said sum of money, so tendered within said time, that then and in that case, the sale so as aforesaid made by said Hanson R. Wilson, on said 26th day of January, A. D. 1856, and all claims and rights thereunder, be set aside and held for naught. And that Fayette B. Hamblin, master of this court, be, and is hereby,

directed to indorse upon said record of the certificate of said
sale in said book number two, page 174: ' This sale and cer-
tificate set aside and cancelled by decree of the County Court of
Boone county.' And that the same order as to said sale be
entered by the clerk of this court upon his judgment docket.
And that said complainants, before such entry by said master
and clerk, be made, and before the first day of March next, pay
in to the clerk of this court, for the use of said Matthias and
Marvin Stone, or their assigns, the said sum of money so ten-
dered as aforesaid, to be paid out to them when the same shall
be demanded. And it is further ordered that the complainants
pay the costs of this ·suit."

The decree in this case was ordered by FULLER, Judge of the
County Court of Boone county.

L. W. PRAY, and W. T. BURGESS, for Plaintiffs in Error.

S. A. HURLBUT, for Defendants in Error.

BREESE, J. This case presents a series of blunders, of which
the defendant here, Gardner, must be the victim.

The sacrifice of a large estate for a small sum of money, is
always to be regretted; but justice requires that a party shall
suffer for his own *laches* when without excuse.

Had the defendant here, Gardner, applied at the proper time,
at the earliest practicable moment, to the court whence the exe-
cution issued, to set aside the sale on the ground that the whole
tract was sold when it was susceptible of a just division,—if the
fact was so,—and made proper proof of the fact, the court might
have set it aside, and directed a new execution to issue. But
he did not do so; he made no effort at relief in this direction,
and turned out the whole tract himself to the sheriff, to sell.

Again, he knew of the sale by the sheriff, and of the amount
necessary to redeem, and the day on which his right to redeem
expired. Yet he does nothing but fold his arms in unconcern,
and suffers the day to elapse, and not until January 26th, 1857,
some three weeks or more after the time had expired, does he
consider it necessary to move in the matter.

On that day, he deposits with the clerk of the Circuit Court
an amount large enough to redeem the land; but the day of
grace had passed, and the clerk had, at no time, any right to
receive the money; so he can take nothing by that motion.

This money being refused by the purchasers, or their agent,
Olney, on the 24th of February following, Gardner received it
back, he having, on the 21st of February, confessed a judgment

in favor of one Gilbert, for $404.66, to make him a judgment creditor, so that he might redeem. On the 24th April, Gilbert paid to the then sheriff, Tisdell, (the sheriff Wilson, who made the sale, having died,) the amount of the judgment, interest and costs for which the land was sold, and on the 5th of May following, received it back again. On paying this amount to the sheriff, to redeem, he did not, as the statute requires, deliver at the same time to the sheriff an execution on his judgment (R. L. 1845, chap. 57, sec. 14), and of course gained nothing by that proceeding. On that day, Gardner filed his bill of complaint and obtained a decree in his favor, to the effect that, on paying the purchase money, with ten per cent. and costs, the purchasers should re-convey to him.

We are at a loss to find a single hook on which to hang this case. We do not know of any power existing in a court of equity to dispense with the plain requirements of a statute; it has been always disclaimed, and the real or supposed hardship of no case can justify a court in so doing. When a statute has prescribed a plain rule, free from doubt and ambiguity, it is as well usurpation in a court of equity as in a court of law, to adjudge against it; and for a court of equity to relieve against its provisions, is the same as to repeal it. Fonblanque Eq., book 1, chap. 1, sec. 3.

If the sheriff who sold the land was dead, what did it matter to the judgment debtor? He knew, or should have known, he could pay the money to his administrator, or, as has been held in the case of *McClusky* v. *McNeely*, 3 Gilm. R. 579, to his deputy, and certainly to the purchaser. R. L. 1845, chap. 57, sec. 13. He did not choose to do either, but was content to deposit the amount, in currency, with the clerk, whose right to receive it was no better than that of the town constable. This right to redeem is a statutory privilege, and its behests must be obeyed.

From beginning to end, the complainant seems to have been doomed to blunders, until, from their repetition, he has lost a valuable property.

Whilst our law allowing redemptions remains as it is, it may be expected that frequent cases of this kind may occur, the party, by reason of the smallness of the amount of the judgment, not being impelled to any great activity. In a country where money is worth vastly more than the rate allowed a purchaser on redemption, it is not at all probable that any person other than the judgment creditor will be a bidder at such sales, and he only as the last chance to get security for his debt. Were there no redemption, and these sales open to fair and free competition, not below a certain valuation, it is quite probable such cases of

great hardship would rarely occur, and men's property would be sold for its real value, or nearly so.

On full consideration of all the allegations and proofs in this cause, we are of opinion that the bill contains no equity upon which to base the relief decreed, and that the decree is unwarranted by the facts, and unsupported on correct equitable principles. The decree is therefore reversed and the bill dismissed.

*Decree reversed.*