SECOND DIVISION 

June 30, 2003

Nos. 1-00-1183, 1-00-1184, 1-00-2213, 1-00-2228, 1-00-2237, 1-00-2238, 1-00-2239 and 1-00-2595, Consolidated

THE COOK COUNTY BOARD OF REVIEW,

Petitioner-Appellant,

v.

THE PROPERTY TAX APPEAL BOARD; ROBERT BOSCH CORPORATION, Taxpayer; and KOMAREK SCHOOL DISTRICT NO. 94, Taxing District,

Respondents-Appellees.

)))))))))

)

)

Petition from the Illinois 

Property Tax Appeal Board

97 22106 I3

97 22107 I3

THE COOK COUNTY BOARD OF REVIEW,

Petitioner-Appellant,

v.

THE PROPERTY TAX APPEAL BOARD; 

CORPORATE LAKES OF MATTESON LLC, Taxpayer; RICH TOWNSHIP HIGH SCHOOL DISTRICT NO. 227, Taxing District; and RICH TOWNSHIP ELEMENTARY SCHOOL DISTRICT NO. 159, Taxing District,

Respondents-Appellees.

)))))))))

)

)

)

)

Petition from the Illinois Property Tax Appeal Board

97 20270 C3

97 20286 C3

THE COOK COUNTY BOARD OF REVIEW,

Petitioner-Appellant,

v.

THE PROPERTY TAX APPEAL BOARD; 

LAKE HOLIDAY PROPERTIES, Taxpayer; UNION RIDGE SCHOOL DISTRICT NO. 86, Taxing District; and  BOARD OF EDUCATION OF RIDGEWOOD HIGH SCHOOL DISTRICT NO. 234, Taxing District,

Respondents-Appellees.

)))))))))

)

)

)

)

Petition from the Illinois Property Tax Appeal Board

97 20778 C3

THE COOK COUNTY BOARD OF REVIEW,

Petitioner-Appellant,

v.

THE PROPERTY TAX APPEAL BOARD, 

and KRAFT FOODS, INC., Taxpayer,

Respondents-Appellees.

)))))))))

)

)

Petition from the Illinois Property Tax Appeal Board

97 22929 C3 through

97 22938 C3

THE COOK COUNTY BOARD OF REVIEW,

Petitioner-Appellant,

v.

THE PROPERTY TAX APPEAL BOARD,

and J.C. PENNEY COMPANY, INC., Taxpayer,

Respondents-Appellees.

)))))))))

)

)

Petition from the Illinois Property Tax Appeal Board

97 21780 C3

THE COOK COUNTY BOARD OF REVIEW,

Petitioner-Appellant,

v.

THE PROPERTY TAX APPEAL BOARD; 

ACE HARDWARE CORPORATION, Taxpayer; BOARD OF EDUCATION ELEMENTARY SCHOOL DISTRICT NO. 159, Taxing District; and BOARD OF EDUCATION OF RICH TOWNSHIP HIGH SCHOOL DISTRICT NO. 227, Taxing District,

Respondents-Appellees.

)))))))))

)

)

)

)

)

Petition from the Illinois Property Tax Appeal Board

97 20182 I3

THE COOK COUNTY BOARD OF REVIEW,

Petitioner-Appellant,

v.

THE PROPERTY TAX APPEAL BOARD; and

KRUPP REALTY PARK PLACE, CHICAGO LIMITED PARTNERSHIP, Taxpayer,

Respondents-Appellees.

)))))))))

)

)

Petition from the Illinois Property Tax Appeal Board

97 23689 C3

97 23690 C3

THE COOK COUNTY BOARD OF REVIEW,

Petitioner-Appellant,

v.

THE PROPERTY TAX APPEAL BOARD; 

and W.W. GRAINGER, INC., Taxpayer,

Respondents-Appellees.

)))))))))

)

Petition from the Illinois Property Tax Appeal Board

97 22829 I3 through

97 22849 I3

MODIFIED ON DENIAL OF PETITION FOR REHEARING

JUSTICE CAHILL delivered the opinion of the court:

We review eight consolidated appeals brought by the Cook County Board of Review (the Board), challenging decisions of the state Property Tax Appeal Board (PTAB).  In each case PTAB first rejected a level of assessment percentage on commercial property mandated by the Cook County Real Property Assessment Classification Ordinance (Cook County ordinance or the ordinance) (Cook County Real Property Assessment Classification Ordinance, Ord. No. 80-0-14 (amended November 6, 1997)).  PTAB then used a median level assessment percentage derived from sales ratio studies prepared by the Illinois Department of Revenue (the Department).

The decision of our supreme court in 
Walsh v. Property Tax Appeal Board
, 181 Ill. 2d 228, 692 N.E.2d 260 (1998), is brief, clear and relevant to a consideration of the cases before us.  Here are two excerpts that inform our response:

"The Illinois property tax scheme is grounded in article IX, section 4, of the Illinois Constitution of 1970, which provides in pertinent part that real estate taxes 'shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law.'  Ill. Const. 1970, art. IX, § 4(a).  Uniformity requires equality in the burden of taxation.  
Kankakee County Board of Review v. Property Tax Appeal Board
, 131 Ill. 2d 1, 20 (1989).  This, in turn, requires equality of taxation in proportion to the value of the property taxed.  
Apex Motor Fuel Co. v. Barrett
, 20 Ill. 2d 395, 401 (1960).  Thus, taxing officials may not value the same kinds of properties within the same taxing boundary at different proportions of their true value.  
Kankakee County Board of Review
, 131 Ill. 2d at 20.  The party objecting to an assessment on lack of uniformity grounds bears the burden of proving the disparity by clear and convincing evidence.  
Kankakee County Board of Review
, 131 Ill. 2d at 22.

***

'[The] great central and dominant idea of the constitution is uniformity of taxation, and no power exists or should exist in any corporate authority to go counter to this command of the fundamental law. Therefore one person cannot be compelled to pay a greater proportion of taxes, according to the value of his property, than another, 
and where assessors have disregarded the injunction of the law and made an assessment of property far below its real cash value, their misconduct must also follow the principle of uniformity and their assessments of all persons must be at the same proportional value
.'  (Emphasis added.)  
People's Gas Light & Coke Co. v. Stuckart
, 286 Ill. 164, 173 (1918).

To hold otherwise would sanction assessed valuations on different proportions of like properties in direct contravention of the uniformity clause.  Ill. Const. 1970, art. IX, § 4(a); 
Kankakee County Board of Review
, 131 Ill. 2d at 20."  
Walsh
, 181 Ill. 2d at 234-37.

With 
Walsh
 in mind, we stress at the outset that the issue the parties would like us to decide, and the first issue raised by the Board–whether PTAB has the 
power
 to determine in an appropriate case that the percentages mandated by the Cook County ordinance for commercial property have not been uniformly applied–cannot be reached for two reasons: (1) the taxpayers never raised the issue of uniformity in six of the eight cases; and (2) in two cases, the evidence tendered by the taxpayers
 is wholly inadequate for meaningful appellate review.  In concluding that the issue of PTAB's power to deviate from the Cook County ordinance need not be reached, we do not mean to suggest that the records and briefs before us are otherwise adequate to fairly address the issue.  We know that administrative agencies lack the authority to invalidate a statute on constitutional grounds or even to question its validity.  
Texaco-Cities Service Pipeline Co. v. McGaw
, 182 Ill 2d 262 (1998).  None of the parties raised this issue, nor would we address it unless necessary for a resolution of the case after full and fair briefing.

The Board raises the following issues on appeal in all eight cases:

(1) PTAB lacked authority to substitute median levels of assessment based on Department of Revenue sales ratio studies for those contained in the Cook County ordinance.

(2) The taxpayers did not raise the issue of uniformity and failed to present evidence on the issue in six cases, and presented untimely or insufficient evidence in two cases.

(3) PTAB took "official" notice of evidence not introduced by the taxpayers–the Department of Revenue sales ratio studies–contravening its own rules and in violation of the Administrative Procedure Act (5 ILCS 100/10-1-1 
et seq
. (West 1998)).

(4) The PTAB decisions in all eight cases were against the manifest weight of the evidence.

(5) In four of the eight cases the fair market value of the property set by PTAB is against the manifest weight of the evidence.

In response, PTAB argues that: (1) PTAB has the authority and duty under the Illinois constitutional requirement of uniformity to apply a median level of assessment derived from the Department of Revenue's sales ratio studies; (2) PTAB may take judicial notice of the studies even though the parties did not introduce them in evidence; and (3) the Board waived the argument that PTAB lacked authority to apply a median level of assessment.  

In the course of this opinion we conclude that the second and third issues raised by the Board are dispositive and that PTAB's orders substituting median level percentages for those codified in the Cook County ordinance must be reversed.  We agree that the record supports the Board's argument that the issue of uniformity was never raised by the taxpayers in six of the cases.  In two cases we conclude that the evidence offered by the taxpayers failed to meet their clear and convincing burden and must be reversed as well.  In the four cases where the Board challenged the findings of PTAB on fair market value, we affirm.

We have been aided in our analysis by the serious interest in these cases among taxpayers and agencies of government, as well as concerned citizen groups.  In addition to the PTAB brief of the Attorney General, each taxpayer has filed a brief.  We have also allowed four 
amici
 briefs:  from the Chicago Board of Education, the president of the Cook County Board, the Chicagoland Chamber of Commerce and the Village of Palatine.  These have also been helpful.

The 
arcana imperii
 of tax law in Illinois are contained in the various acts codified in chapter 35 of the Illinois Compiled Statutes, and to a lesser extent, the enabling legislation, rules and regulations of the agencies created to oversee the orderly and fair imposition and collection of taxes.  PTAB is one of these agencies.  The legislature created PTAB in 1967 to review taxpayer challenges to property tax assessments imposed by local boards of review outside Cook County.  Before 1967, challenges to assessments made by local boards were filed in the circuit court and the taxpayer faced a formidable burden of proof–constructive fraud–to overturn them.  See, 
e.g.
, 
People ex rel. Nordlund v. Lans
, 31 Ill. 2d 477, 478-79, 202 N.E.2d 543 (1964).  PTAB's enabling legislation and the rules adopted by PTAB "eliminate formal rules of pleading, practice and evidence."  35 ILCS 200/16-180 (West 2000).  PTAB is directed to make a decision "in each appeal" based on "equity and the weight of evidence and not upon constructive fraud."  35 ILCS 200/16-185 (West 2000).  The taxpayer's burden of proof was eased:  from evidence establishing constructive fraud to evidence that is "clear and convincing."  See 
Walsh
, 181 Ill. 2d at 234.  In 1995 the legislature expanded PTAB's jurisdiction to Cook County, first to residential property appeals, and later to commercial property.  The eight cases here consolidated for review are the first commercial property cases to reach us.

A word about the terms "sales ratio study" and "median level of assessment":  At the risk of oversimplification, we can say a sales ratio study is a procedure employed by the Illinois Department of Revenue to track past sale prices of real estate in such a way that the current value of a particular piece of property can be fairly set.  A median level of assessment is then derived from these studies.  Expressed in a percentage, a median level of assessment, assigned to like parcels of property, insures that comparable properties will be assessed uniformly.  A threshold issue in six of the cases is whether the taxpayers raised the uniformity issue.  A threshold issue in two of the cases in which the issue was raised is whether the evidence of sales ratio studies offered by the taxpayers was sufficient to establish by clear and convincing evidence that the percentages mandated by the Cook County ordinance were not uniformly applied to commercial property in Cook County.

We reverse the orders of PTAB in all eight cases that applied a median level of assessment lower than that set out in the Cook County ordinance.  We conclude that in six of the eight cases PTAB failed to follow its own rules and the Administrative Procedure Act (5 ILCS 100/1-1 
et seq
. (West 1998)) when it granted relief the taxpayers never asked for based on evidence the taxpayers never submitted.  In the other two cases, we find that the evidence submitted by the taxpayers was inadequate to support the findings made by PTAB without reference to evidentiary material outside the record.

At least since 1963 our supreme court has held that evidence such as the sales ratio studies are admissible only if properly brought before the court.  "[C]ourts *** require that the mass of documents thus summarily received in evidence be placed in the hands of the court, or at least be made accessible to the opposing party in order that the correctness of the evidence may be tested by such inspection as is desired."  
People 
ex rel.
 Wenzel v. Chicago & North Western Ry. Co.
, 28 Ill. 2d 205, 213, 190 N.E.2d 780 (1963).  We reject PTAB's argument that even if the taxpayer did not raise the issue, or even if evidence supplied by the taxpayer was insufficient, PTAB may take "judicial notice" of sales ratio studies evidence.  We affirm the fair market values assessed by PTAB where contested by the Cook County Board of Review in: No. 1-00-1184, 
Corporate Lakes of Matteson LLC
; No. 1-00-2228, 
Kraft Foods, Inc.
; No. 1-00-2237, 
J.C. Penney, Inc.
; and No. 1-00-2595, 
W.W. Grainger, Inc.
  We remand all eight cases to PTAB with directions to amend its orders to reflect the specified level of assessment for each class mandated by the Cook County ordinance.

In each of the eight cases before us PTAB decided that the Department's median levels of assessment for certain classifications of commercial property in Cook County must be used rather than the level mandated by the ordinance to insure that the uniformity requirement of section 4, article IX, of the 1970 Illinois Constitution was met. 

We begin with a statement of our jurisdiction and standard of review.  PTAB decisions are subject to direct appellate review where, as here, a change in assessed valuation of $300,000 or more is sought.  35 ILCS 200/16-195 (West 2000); 155 Ill. 2d R. 335.  Our review is in accordance with the Administrative Review Law (735 ILCS 5/3-101 
et seq.
 (West 2000)).  35 ILCS 200/16-195 (West 2000).

We consider all questions of law and fact presented by the record on administrative review.  
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 204, 692 N.E.2d 295 (1998).

We review PTAB's evidentiary rulings in the eight cases under a manifest weight of the evidence standard.  
Commonwealth Edison Co. v. Property Tax Appeal Board
, 102 Ill. 2d 443, 468 N.E.2d 948 (1984).  PTAB's argument that its rules and enabling legislation empower it to deviate from the Cook County ordinance in granting uniformity relief is reviewed 
de novo
.  
Nolan v. Hillard
, 309 Ill. App. 3d 129, 143, 722 N.E.2d 736 (1999) (we review 
de novo
 the interpretation placed on rules by an administrative agency charged with its administration).  
An agency's interpretation is accorded considerable deference but is not binding and will be rejected if erroneous.  
Denton v. Civil Service Comm'n
, 176 Ill. 2d 144, 148, 679 N.E.2d 1234 (1997). 

We note a standard of review question that arises out of language in the enabling legislation that created PTAB: the decisions we review here reach us after a 
de novo
 review by PTAB of the Cook County Board's decision.  Section 1910.50(a) provides that "all proceedings before the Property Tax Appeal Board shall be considered 
de novo
."  86 Ill. Adm. Code §1910.50(a) (Conway Greene CD-ROM 2002).  PTAB's entrance into the Cook County tax appeal system creates an appeal hierarchy where, under certain circumstances, a tax complaint is reviewed by two administrative agencies before it reaches a court.  PTAB's role as an administrative agency charged with 
de novo
 review of another administrative agency's decision requires some discussion of the nature of 
de novo
 review in an administrative context.  

Black's Law Dictionary defines 
de novo
 simply as "anew" and then refers to "appeal 
de novo
" and "hearing
 de novo
."  Black's Law Dictionary 447 (7th ed. 1999).  
Appeal 
de novo
 is defined as "[a]n appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings."  Black's Law Dictionary 94 (7th ed. 1999).  A hearing 
de novo
 is defined as "[a] new hearing of a matter, conducted as if the original hearing had not taken place."  Black's Law Dictionary 725 (7th ed. 1999).  Since PTAB is empowered to conduct hearings on appeal and receive evidence, we must decide whether PTAB may consider evidence never presented to the local Board. 

An appeal connotes bringing a matter to a higher authority for reconsideration.  PTAB represents a higher appellate authority under the current tax adjudication structure.  A "hearing" may be conducted anew, without deference to the proceedings before the Board.  But we believe PTAB's review must be limited to the record created before the Board and may not traverse issues that, although related, are not properly before PTAB because the evidence was never introduced before the body whose decision is under review.  Its very name–"appeal board"–suggests the scope of its jurisdiction.  See generally 35 ILCS 200/16-180, 16-185 (West 2000).  To the extent that PTAB implies in its brief that its 
de novo
 powers allow for the introduction of evidence and issues never considered by the Board, we reject it.  We are aware that PTAB is empowered to "establish by rules an 
informal procedure
 for the determination of the correct assessment of property which is the subject of an appeal."  (Emphasis added.)  35 ILCS 200/16-180 (West 2000).  
We have found no case where an administrative agency in Illinois is authorized to go beyond the record developed by the parties before it in reaching a decision.  We also believe that PTAB's authority to relax the rules of evidence and develop informal procedures (35 ILCS 200/16-180 (West 2000)) cannot be read to allow PTAB to address issues never raised by the parties or to rely on evidence a court of review cannot find in the record.

  PTAB, as an administrative agency, cannot base its decisions on facts, data and testimony not included in the record.  
Commonwealth Edison Co. v. Property Tax Appeal Board of the State of Illinois
, 115 Ill. App. 3d 371, 379, 450 N.E.2d 780 (1983).  PTAB decisions must be based on evidence introduced in the case.  Nothing can be treated as evidence that is not introduced as such.  
Commonwealth Edison
, 115 Ill. App. 3d at 379.  The taxpayers' failure to introduce evidence before the Board supporting a constitutional uniformity challenge in their cases in chief prevents a grant of relief on this basis.  We believe the language in PTAB's enabling legislation that provides for 
de novo
 proceedings simply means what it ordinarily means in an appellate context: that PTAB need not defer to the rulings of a local board that traditionally would be reviewed under an abuse of discretion standard.  But PTAB remains bound, as are we, by the record presented to it.

The Board contends that a uniformity challenge was not made in six of the eight cases before us: No. 1-00-1183, 
Robert Bosch Corp.
; No. 1-00-1184, 
Lakes of Matteson
; No. 1-00-2228, 
Kraft Foods
; No. 1-00-2237, 
J.C. Penney
; No. 1-00-2238, 
Ace Hardware Corp.
; and No. 1-00-2595, 
Grainger
.  PTAB contends that, even though the taxpayer may have failed to do so, the Board waived the issue when it subsequently failed to object.  PTAB further argues that it "routinely" applies sales ratio studies in appeals and claims that the Board "either knew or should have known that the PTAB applies the median level of assessment in all complaints before it where the parties have presented evidence indicating the market value of the property."  PTAB then argues that the Board "knew that the PTAB would use the Department [of Revenue] sales ratio studies to determine and apply the median level of assessment because [the Board] submitted [evidence challenging the sales ratio studies] *** and case law relating to the sales ratio studies."   PTAB concludes that the evidentiary material submitted by the Board placed uniformity at issue and allowed PTAB to address it, even though the taxpayers did not raise it.  We are not persuaded.

The lack of an objection by the Board is not to the point.  The burden is on the taxpayer to submit substantive evidence to establish a lack of  uniformity.  86 Ill. Adm. Code §1910.63(b) (Conway Greene CD-ROM 2002).  The taxpayers have conceded that no such evidence had been submitted in six of the eight cases.  Instead, it is suggested that the tender by the Board of a study criticizing the methods and procedures used by the Department in its sales ratio studies and citation to a supreme court case (
In re Application of Rosewell
, 106 Ill. 2d 311, 478 N.E.2d 343 (1985) (
U.S. Steel
)) anticipated PTAB's use of the sales ratio studies.  The flaw in the argument is that the burden of proof did not shift to the Board unless and until the taxpayers met their burden of going forward with substantive evidence.  86 Ill. Adm. Code §1910.63(c) (Conway Greene CD-ROM 2002).  Nor could the sales ratio studies be introduced under the guise of rebuttal evidence.  86 Ill. Adm. Code §1910.66(b) (Conway Greene CD-ROM 2002) (rebuttal evidence shall not consist of new evidence and a party is precluded from submitting its case in chief under the guise of rebuttal evidence).  The Board's submission of a report did not alter the nature of the claim in the six cases before PTAB where the taxpayers challenged only the fair market value assigned.  There is evidence in the record that the Board was aware of PTAB's "procedures," but that knowledge, and the Board's tender of evidence in "anticipation" of PTAB's action, cannot invest PTAB with the power to supplement the record with evidence never introduced by the taxpayers and grant relief the taxpayers never sought.

PTAB cites no authority to support its argument that an administrative agency's routine practice of using certain documents in reaching its decision and a party's alleged knowledge of such a practice supplants the procedural requirement that the evidence relied upon in reaching its decision be introduced by the party bearing the burden of proof.  
Commonwealth Edison
, 115 Ill. App. 3d at 379.

Nor does PTAB's mandate that its decisions be based on equity circumvent the requirement to base its decision on clear and convincing evidence introduced by the taxpayer.  An "equitable" decision must be based on the "weight of the evidence."  Equitable powers may not be used to fashion a remedy in contradiction to the plain requirements of a statute.  
Stone v. Gardner
, 20 Ill. 304 (1858).  PTAB's own rules place the burden of proof on the complaining party.

We also disagree with PTAB that two cases cited by the Board in support of its position on this issue are inapplicable.  PTAB contends that 
County of Coles v. Property Tax Appeal Board
, 275 Ill. App. 3d 945, 657 N.E.2d 673 (1995), and 
Community High School District No. 155 v. Property Tax Appeal Board
, 288 Ill. App. 3d 386, 682 N.E.2d 235 (1997), "have nothing to do with raising uniformity claims" and do not support the proposition that PTAB was without authority to grant uniformity relief.  PTAB misreads the Board's reason for citing these cases.

The issue in both 
County of Coles
 and 
Community High School
 was how a change in assessed valuation was to be measured for purposes of determining whether jurisdiction was in the circuit or appellate court.  
County of Coles
, 275 Ill. App. 3d at 946; 
Community High School District
, 288 Ill. App. 3d at 388.  We held that the change in assessed valuation is the difference between the final decision of the Board and the proposed assessment set out in the petition filed with PTAB.  
County of Coles
, 275 Ill. App. 3d at 949; 
Community High School District
, 288 Ill. App. 3d at 388-89.  We reasoned that this rule had the advantage of certainty and prevented the parties from amending the amount of change sought.  
County of Coles
, 275 Ill. App. 3d at 949; 
Community High School District
, 288 Ill. App. 3d at 388.  

Although uniformity was not an issue in 
County of Coles
 or 
Community High School District
, the Board correctly analogizes the holding in these cases to support the proposition that amendments to PTAB petitions to add claims not raised earlier are not allowed, for the same reason that amendments to a change in valuation are not allowed: the claims are fixed with the filing of a petition with PTAB.  See 
County of Coles
, 275 Ill. App. 3d at 949;  
Community High School District
, 288 Ill. App. 3d at 388.  Here, the petitions filed in six cases challenged only fair market value.  Under the rationale in 
County of Coles
 and 
Community High School District
, additional issues cannot be added on appeal.

PTAB argues, in the alternative, that it did not abuse its discretion when it took judicial notice of the sales ratio studies.  PTAB states in its brief: "It is well known that the PTAB routinely takes judicial notice of the Department's sales ratio studies in its decisions so as to determine the proper level of assessment to apply."  But judicial notice cannot expand the scope of review to matters not properly part of the record on appeal.  
In re Marriage of Holder
, 137 Ill. App. 3d 596, 602, 484 N.E.2d 485 (1985), citing 
Hofmann v. Hofmann
, 94 Ill. 2d 205, 226, 446 N.E.2d 499 (1983).  We note again that evidence of the sales ratio studies was never part of the record before the Board.

PTAB suggests that the power to take judicial notice is embedded in its own rule, which provides that PTAB "may take official notice of decisions it has rendered, matters within its specialized knowledge and expertise, and all matters of which the Circuit Courts of this State may take judicial notice."  86 Ill. Adm. Code §1910.90(i) (Conway Greene CD-ROM 2002).  PTAB contends that the sales ratio studies are embraced by two of these categories: matters "within its specialized knowledge and expertise" and matters "of which the Circuit Courts of this State may take judicial notice."  We disagree.

The sales ratio studies are generated by the Department of Revenue.  PTAB is an independent agency charged with taking evidence and reviewing assessments, independent of the Department.  
People ex rel. Thompson v. Property Tax Appeal Board
, 22 Ill. App. 3d 316, 321-22, 317 N.E.2d 121 (1974).  PTAB has no investigative or executive arm that specializes in compiling or examining sales ratio studies.    The Administrative Procedure Act provides:

"(c) Notice may be taken of matters of which the circuit courts of this State may take judicial notice.  In addition, notice may be taken of generally recognized technical or scientific facts within the agency's specialized knowledge.  Parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material noticed, including any staff memoranda or data, and they shall be afforded an opportunity to contest the material so noticed.  The agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence."  5 ILCS 100/10-40 (c) (West 1998).

The sales ratio studies are not "technical or scientific facts," but Department of Revenue studies whose methodology and results are subject to interpretation.  See 
U.S. Steel
, 106 Ill. 2d at 320-24.

Nor are the sales ratio studies matters of which courts may take judicial notice.  Judicial notice is limited to those facts that are so capable of verification as to be beyond reasonable controversy.  "To say that a court will take judicial notice of a fact is merely another way of saying that the usual forms of evidence will be dispensed with if the fact is one which is commonly known or readily verifiable from sources of indisputable accuracy."  
Holder
, 137 Ill. App. 3d at 602, citing 
Murdy v. Edgar
, 103 Ill. 2d 384, 394, 469 N.E.2d 1085 (1984); see also 
City of Rock Island v. Cuinely
, 126 Ill. 408 (1888) (judicial notice properly taken of legislative enactments); 
People ex rel. Lejcar v. Meyering
, 
345 Ill. 449, 452, 178 N.E. 80 (1931) (geographical facts); 
Dowie v. Sutton
, 227 Ill. 183, 193, 81 N.E. 395 (1907) (historical events).  A court will not take judicial notice of critical evidentiary material not presented in the court below or of evidence that may be significant in the proper determination of the issues between the parties.  
People v. Mehlberg
, 249 Ill. App. 3d 499, 531, 618 N.E.2d 1168 (1993), citing 
Vulcan Materials Co. v. Bee Construction
, 96 Ill. 2d 159, 166, 449 N.E.2d 812, 815 (1983).  "[T]he well-defined rule is that courts refrain from taking judicial notice of the value of specific realty due to the many factors affecting its value."  
Holder
, 137 Ill. App. 3d at 602, citing 
222 East Chestnut Street Corp. v. Board of Appeals
, 14 Ill. 2d 190, 194, 152 N.E.2d 465 (1958).

Even if we were to grant some weight to PTAB's judicial notice argument, PTAB's contention that the Board received adequate notice that PTAB would take judicial notice of the sales ratio studies from PTAB's "past practice" is unpersuasive.  If a party is not informed of the facts of which the court is taking judicial notice, he is deprived of the opportunity to challenge the deductions drawn from such notice or to dispute the truth of the facts allegedly relied upon.  
People v. Smith
, 176 Ill. 2d 217, 238,  680 N.E.2d 291 (1997), citing 
Garner v. Louisiana
, 368 U.S. 157, 173, 7 L. Ed. 2d 207, 219, 82 S. Ct. 248, 256-57 (1961).  PTAB admits that it "did not formally state that it was taking judicial notice of the Department's sales ratio studies until 
after
 the hearing."  (Emphasis added.)  PTAB relies on 
Siddiqui v. Department of Professional Regulation
, 307 Ill. App. 3d 753, 757, 718 N.E.2d 217 (1999), where the Department took judicial notice of a statute for the first time after a hearing.  We find 
Siddiqui
 easily distinguishable  In that case, the court found that Siddiqui was not prejudiced by the evidentiary error because he had an opportunity to respond in a reply brief.  
Siddiqui
, 307 Ill. App. 3d at 758.  Nor does the Board's submission of a report critical of the sales ratio studies necessarily show that the Board knew the studies would be judicially noticed by PTAB.  Even in No. 1-00-1183,  
Bosch
, where the taxpayer tried to raise the issue of uniformity during the hearing, the PTAB hearing officer did not give the parties an opportunity to introduce evidence on uniformity that might support or challenge the sales ratio studies.  Nevertheless, PTAB later took judicial notice of the studies–after the hearing.  The hearing officer did not allow Bosch to pursue the issue of uniformity.  She found the issue irrelevant at the hearing stage.  As she pointed out:

"He's supposed to be giving the opinion of what market value is, what he believes market values is according to his appraisal.  His opinion of how an assessor assesses, whether they're equitable and not equitable isn't really relevant.  I'm not going to allow it."  

The Board had argued at the PTAB hearing that Bosch did not raise the issue of uniformity when it first filed its PTAB appeal.  In fairness to PTAB, while the hearing officer limited the hearing to the issue of fair market value, she did imply that uniformity would be addressed by PTAB: "Ultimately, the decision will be made by the Board as far as what the equitable–as far as what the percent is going to be."

In fairness to the Board, however, the question arises: how should a party to an adversarial proceeding respond to a suggestion that an issue will be addressed later, after the hearing is over?  At this point, the record built by the parties and sent to PTAB was devoid of evidence relating to a lack of uniformity in the assessment process.  It remains so, unless we accept PTAB's argument that PTAB is empowered to develop the issue on its own.

 PTAB's reliance on a series of cases such as 
People ex rel. Ruchty v. Saad
, 411 Ill. 390, 104 N.E.2d 273 (1952), 
People ex rel. Kohorst v. Gulf, Mobile & Ohio R.R. Co.
, 22 Ill. 2d 104, 105, 174 N.E.2d 182 (1961),  
People ex rel. Hillison v. Chicago, Burlington & Quincy R.R. Co.
, 22 Ill. 2d 88, 97, 174 N.E.2d 175 (1961), and 
Wenzel
, 28 Ill. 2d at 212, to support its argument that Illinois courts have long relied on sales ratio studies for deciding uniformity claims is misplaced.  Sales ratio studies were important evidence in these cases, but they were tendered in evidence by a party.  Multiple challenges to the sales ratio studies were considered and evidence of the Department's methodology was made of record and subject to cross-examination.  The taxpayer was given full opportunity to impeach the evidence in an adversarial proceeding.  In 
Hillison
, the taxpayer introduced the sales ratio studies, which were unrebutted by the Department and so were admitted as 
prima facie
 evidence of the level of assessment.  But the court cautioned that it was not implying that the sales ratio studies are conclusive evidence of value where the Department introduces conflicting evidence.  
Hillison
, 22 Ill. 2d at 100–01.  In 
Kohorst
, cited by 
Wenzel
, the sales ratio studies were admitted, supported by testimony from a supervisor of the property tax division of the Department and several experts.  
Kohorst
, 22 Ill. 2d at 111-12.  In 
Wenzel
, "defendant also introduced testimony explaining the ratio studies and expressing opinions as to their reliability."  
Wenzel
, 28 Ill. 2d at 208.  In contrast, in 
U.S. Steel
, 106 Ill. 2d at 320, the court found the sales ratio studies at issue were not sufficiently accurate to show constructive fraud, the burden of proof at that time.  The 
U.S. Steel
 court found the uncontradicted expert testimony showed that the sales ratio studies for the years in question should be afforded little weight because the studies were "not random, not representative, unadjusted and insufficiently edited."  
U.S. Steel
, 106 Ill. 2d at 324.

Challenging the 
U.S. Steel
 holding, PTAB cites two later supreme court cases, 
Airey v. Department of Revenue
, 116 Ill. 2d 528, 537-38, 508 N.E.2d 1058 (1987), and 
Advanced Systems, Inc. v. Johnson
, 126 Ill. 2d 484, 496, 535 N.E.2d 797 (1989), as cases in which the methodology of the sales ratio studies was upheld.  These cases are readily distinguishable: they were not contested cases within the meaning of the Administrative Procedure Act (5 ILCS 100/1-30 (West 1998)).  
Johnson
, 126 Ill. 2d at 506.  In a contested case, such as those before us, "[t]rial-type procedures, including the taking of evidence subject to cross-examination, are required when individual interests are at stake and specific facts are in dispute."  
Johnson
, 126 Ill. 2d at 506.  But 
Airey
 and 
Johnson
 were both equalization cases, where "the nature of [the hearing] is similar to a rulemaking or informational proceeding," which is not subject to such evidentiary requirements.  
Johnson
, 126 Ill. 2d at 506-07.  PTAB relies on 
Airey
 and 
Johnson
 to suggest that the supreme court's holding in 
U.S. Steel
 has been overruled 
sub nom.
, without ever pointing out that 
Airey
 and 
Johnson
 were not contested cases and that 
U.S. Steel
 was.

Where, it is argued, the taxpayers preserved the uniformity issue for review in No. 1-00-2213, 
Lake Holiday
, and No. 1-00-2239, 
Krupp Realty
, we find that the evidence in the record of the sales ratio studies was, in fact, weightless from an appellate perspective.  The burden is on the taxpayer to support a uniformity challenge by clear and convincing evidence.  
Walsh
, 181 Ill. 2d at 234; 86 Ill. Adm. Code §1910.63(e) (Conway Greene CD-ROM 2002).  The contesting party has the burden of going forward and "must provide substantive, documentary evidence or legal argument challenging the correctness of the assessment of the subject property."  86 Ill. Adm. Code §1910.63(b) (Conway Greene CD-ROM 2002).  To show a lack of uniformity by using the Department's sales ratio studies, a taxpayer must show by clear and convincing evidence that the studies are random, representative, properly edited and properly adjusted for the court to consider them as competent evidence.  
U.S. Steel
, 106 Ill. 2d at 323-24.  In this record we have a one-page, handwritten, unsigned summary document entitled PTAX-215, "Assessment Ratios Adjusted for Changes through 1997 Assessor for Cook County."  The weight of PTAB's argument ultimately rests on this document.  Setting aside the manner in which it found its way into the record, we are at a loss to determine how the underlying studies can be subjected to rational appellate review based on it.

PTAB's embrace of the Department's sales ratio studies in the form they have reached this record also suggests that PTAB ignored the Joint Committee on Administrative Rules (JCAR) objections to a rule proposed by PTAB authorizing consideration of such evidence in nonresidential property appeals in Cook County.  

PTAB proposed a rule that did not distinguish between residential and nonresidential property in Cook County.  As originally drafted, it allowed PTAB to consider sales ratio studies and other competent assessment level evidence to resolve an appeal.  98 Ill. Reg. 3724 (proposed February 20, 1998).  JCAR objected to the use of sales ratio studies as 
prima facie
 competent evidence:

"[B]y prejudging to be competent evidence the Department of Revenue's Annual Sales Ratios Studies, and not other specific forms of competent evidence, the rulemaking could adversely affect the local governments and school districts of Cook County.  Illinois statutes refer only to use of these Studies in counties other than Cook, thus the Department has no clear statutory basis for applying the Studies in Cook County."  98 Ill. Reg. 11646.

The objection made clear that the legislature did not intend PTAB to elevate sales ratio studies over other forms of evidence, and use them to create a rebuttable presumption of a lack of uniformity in the process.  In response, PTAB changed the wording.  The rule now allows PTAB to "
consider competent evidence
 *** which is relevant to the level of assessment applicable to the subject property."  (Emphasis added.)  86 Ill. Adm. Code 1910.50(c)(3) (Conway Greene CD-ROM 2002).  Absent is a specific reference to sales ratio studies in PTAB's proposed rule.  Yet, it is clear from PTAB's brief that it is operating as if the JCAR objection is of no moment.  The legislature may have another view.

We are left only to decide whether PTAB's findings on fair market value were proper in those cases where the issue was contested by the Board: No. 1-00-1184, 
Lakes of Matteson
; No. 1-00-2228, 
Kraft Foods
; No. 1-00-2237, 
J.C. Penney
; and No. 1-00-2595, 
Grainger
.
  Where fair market value is the basis of an appeal, the value of the property must be proved by a preponderance of the evidence.  86 Ill. Adm. Code §1910.63(e) (1996).  We will not overturn a decision of an administrative agency unless it was against the manifest weight of the evidence.  
Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n
, 85 Ill. 2d 547, 550, 426 N.E.2d 885 (1981).  "A reviewing court will neither substitute its judgment for that of the administrative agency nor overturn administrative findings unless they are without substantial foundation in the record."  
Lyon v. Department of Professional Regulation
, 238 Ill. App. 3d 379, 383, 606 N.E.2d 475 (1992), citing 
Irving's Pharmacy v. Department of Registration & Education
, 75 Ill. App. 3d 652, 394 N.E.2d 627 (1979).

In these four cases, the taxpayers each submitted an appraisal finding fair market value less than that used by the assessor.  PTAB's decision in each case details the reasons why PTAB gave greater weight to the taxpayers' appraisals than those submitted by the Board.  "Because the weight of the evidence and the credibility of the witnesses are uniquely within the province of the administrative agency, there need only be some competent evidence in the record to support its findings."  
Jagielnik v. Board of Trustees of the Police Pension Fund
, 271 Ill. App. 3d 869, 875, 649 N.E.2d 527 (1995).  PTAB's decisions on the issue of fair market value are not against the manifest weight of the evidence.

[The following material is nonpublishable under Supreme Court Rule 23.]

  

[The preceding material is nonpublishable under Supreme Court Rule 23.]

We reverse the assessment findings in all eight cases.  We affirm the fair market values assessed by PTAB in No. 1-00-1184, 
Lakes of Matteson
; No. 1-00-2228, 
Kraft Foods
; No. 1-00-2237, 
J.C. Penney
; and No. 1-00-2595, 
Grainger
.
  
All eight cases are remanded to PTAB with directions to apply the level of assessment mandated by the classification ordinance.  PTAB's motion to dismiss is denied; the Board's motion to amend its petition for review in No. 1-00-2228, 
Kraft Foods
, is granted.  The Board's motion to file a supplemental appendix in No. 1-00-1183, 
Bosch
, is denied.

Affirmed in part and reversed in part; remanded with directions.

GREIMAN, J., and McBRIDE, J., concur.