THE COOK COUNTY BOARD OF REVIEW, Petitioner-Appellant, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Respondents-Appellees.

First District (2nd Division)   No. 1—01—3232

Opinion filed December 16, 2003.

Richard A. Devine, State's Attorney, of Chicago (Patrick Driscoll, Whitney Carlisle, Michael Prinzi, and Tatia Gibbons, Assistant State's Attorneys, of counsel), for petitioner.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Karen J. Dimond, Assistant Attorney General, of counsel), for respondent Illinois Property Tax Appeal Board.

Leonard W. Golan, Patrick C. Doody, and Matthew J. Cozzi, all of Field & Golan, of Chicago, for respondent Lurie Company.

David A. Epstein, of David A. Epstein, Ltd., of Chicago, for *amicus curiae*.

JUSTICE CAHILL delivered the opinion of the court:

We address a Cook County Board of Review (the Board) appeal challenging a decision by the Illinois Property Tax Appeal Board (PTAB). The main question we consider is whether PTAB has the authority to expand the scope of a taxpayer's appeal to include issues never raised by the taxpayer before the Cook County Board of Review. In this case, PTAB ruled that responsive pleadings of the Board on appeal raised issues PTAB was empowered to address. We conclude that,

under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)) and PTAB's own rules, the scope of PTAB's review and the relief it may grant is limited to the relief sought by a taxpayer before the Board. We reverse the order of PTAB applying a 25% level of assessment to the taxpayer's property and remand with directions to PTAB to apply the 38% level of assessment mandated by the Cook County Real Property Assessment Ordinance (Cook County ordinance) (Cook County Real Property Assessment Classification Ordinance, Ord. No. 80—0—14 (amended November 6, 1997)).

The taxpayer, the Lurie Company, owner of commercial 5A property, filed an appeal with PTAB following an unsuccessful appeal before the Board. PTAB entered an order adjusting the fair market value of the property to $14,450,000. PTAB then applied a 25% level of assessment instead of the 38% applied to commercial 5A property mandated by the Cook County ordinance. The Board did not appeal PTAB's reduction of the fair market value of the property. PTAB's deviation from the Cook County ordinance was based on PTAB's review of sales ratio studies purporting to establish an underassessment trend in Cook County residential property, and on PTAB's reading of the 2½:1 ratio limitation of the Illinois Constitution (Ill. Const. 1970, art. IX § 4(b)). This limitation prohibits the assessment level of the highest classification in a county from exceeding 2½ times the level applied to the lowest classification in that county.

It is undisputed that the taxpayer challenged before the Board only the fair market value assigned to its property. The taxpayer did not raise a uniformity claim before the Board based on a disparate assessment level. The Board's decision upheld the fair market value assigned by the assessor and applied the statutory 38% assessment level mandated by the Cook County ordinance. The taxpayer then appealed to PTAB, again challenging only the fair market valuation. The only materials the taxpayer submitted were appraisal reports supporting the taxpayer's claim that the fair market value of the property was less than that assigned by the assessor and affirmed by the Board.

We conclude as we did in *Cook County Board of Review v. Property Tax Appeal Board*, 339 Ill. App. 3d 529, 791 N.E.2d 8 (2002) (hereinafter *Bosch*), that the scope of PTAB's review should have been confined to a consideration of the Board's fair market value determination. But as in *Bosch*, PTAB addressed and decided a new issue here. How that happened and our reasoning in rejecting PTAB's authority to do so is addressed in the balance of this opinion. Although we dispose of this appeal on the grounds that the contested issue of uniformity was not properly before PTAB, we address the arguments in support of PTAB's analysis of the uniformity issue. Our discussion

of these issues is partly *dicta* within the context of this case. But we address the uniformity arguments because the discussion provides a context for our disposition of this appeal. We note that the discussion is based on our resolution of these issues in *Bosch,* where they were properly raised in two cases.

The Board's materials filed with PTAB included not only appraisal reports designed to rebut the taxpayer's fair market value evidence, but also a copy of the Cook County ordinance, case law relating to the use of sales ratio studies, a report critiquing the sales ratio studies, and a copy of the "Review of the Assessment Sales Ratio Study Program for the Illinois Department of Revenue" by the International Assessing Officers.

Based on the Board's submissions, the taxpayer then asked PTAB to take judicial notice of the sales ratio studies for the years 1992-95, copies of which the taxpayer then submitted. The taxpayer also asked PTAB to take judicial notice of "any official studies subsequent to 1995 which have relevance to this appeal." The taxpayer conceded that it "did not make any claims to any particular assessment level or sales ratio study findings" in the initial appeal before the Board. But the taxpayer maintained before PTAB that the Board's submissions "have now placed the assessment level into controversy." The taxpayer also asked PTAB to take judicial notice of sales ratio studies for Class 2 residential properties. The taxpayer claimed that these studies established that residential property in Cook County was assessed at 10%, rather than the 16% required by the Cook County ordinance. The taxpayer then reasoned that, based on this 10% level of assessment for residential property, commercial property could not constitutionally be assessed at more than 25% of the fair market value.

The taxpayer renewed its request that PTAB take judicial notice of the sales ratio studies at a hearing on September 20, 2000. The Board objected, claiming that it had not been made aware of the taxpayer's request for judicial notice. The Board also objected because the sales ratio evidence was not certified.

The hearing officer declined to take judicial notice of the sales ratio studies. But, the hearing officer then ruled that the Board had placed uniformity at issue by its "voluminous" submission of documents relating to sales ratio studies. The hearing officer characterized the taxpayer's submissions as "rebuttal" evidence that "was timely submitted." The hearing officer then stated that the uniformity issue was now at issue and judicial notice was unnecessary. He said:

> "[T]he issue of sales ratios has already been entered without a checkmark on the petition that's already an issue, which this Board [PTAB] will consider. This Board has accepted evidence by both

parties on that issue; and, therefore, I see no need at this juncture to take judicial notice of it. It's an issue in evidence."

We reject at the outset PTAB's and the taxpayer's argument that the uniformity issue was timely raised. The hearing officer proceeded on a theory that the Board's submissions raised the issue, allowing the taxpayer to submit rebuttal evidence. The argument also assumes that PTAB is empowered under its statutory mandate to address issues never before raised. This view overlooks PTAB's own rules and the Illinois Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)).

■ The taxpayer, as a contesting party, bears the burden to submit substantive evidence to establish a lack of uniformity. 86 Ill. Adm. Code §1910.63(b) (Conway Greene CD-ROM 2002). The burden of proof does not shift unless and until the taxpayer meets its burden of going forward with substantive evidence. 86 Ill. Adm. Code §1910.63(c) (Conway Greene CD-ROM 2002). Nor can the sales ratio studies qualify as rebuttal evidence as suggested by the PTAB hearing officer. 86 Ill. Adm. Code §1910.66(b) (Conway Greene CD-ROM 2002) (rebuttal evidence shall not consist of new evidence and a party is precluded from submitting its case in chief under the guise of rebuttal evidence).

We addressed procedurally similar facts in *Bosch*. *Bosch* was a consolidated appeal in which we reviewed PTAB orders in eight tax appeals. *Bosch*, 339 Ill. App. 3d at 533. An issue in *Bosch* was PTAB's authority, if any, to deviate from assessment levels set out in the Cook County ordinance to remedy a uniformity challenge based on an interpretation of sales ratio studies generated by the Department of Revenue (the Department). We held that we could not reach this issue because the taxpayers in six of the eight cases had not timely raised it. We found that, although timely raised in two cases, the evidence was insufficient to allow appellate review. *Bosch*, 339 Ill. App. 3d at 534. Our analysis in *Bosch* applies with equal force here, where uniformity was not raised by the taxpayer:

"The Board's submission of a report did not alter the nature of the claim in the six cases before PTAB where the taxpayers challenged only the fair market value assigned. There is evidence in the record that the Board was aware of PTAB's 'procedures,' but that knowledge, and the Board's tender of evidence in 'anticipation' of PTAB's action, cannot invest PTAB with the power to supplement the record with evidence never introduced by the taxpayers and grant relief the taxpayers never sought." *Bosch*, 339 Ill. App. 3d at 539.

■ As in *Bosch*, the Board's submissions here could not enlarge the taxpayer's appeal to PTAB beyond the issue of fair market valua-

tion originally challenged. See, *e.g.*, *People ex rel. Vuagniaux v. City of Edwardsville*, 254 Ill. App. 3d 407, 672 N.E.2d 40 (1996) (appellate review limited to consideration of the errors raised by the property owner, where the city was not awarded by the trial court all that it sought and did not file a cross-appeal regarding those issues on which it did not prevail).

Nor does PTAB's proclaimed "routine" use of sales ratio studies authorize use of the studies here when the issue is not raised and supporting evidence is not submitted by the party bearing the burden of proof. We rejected this argument in *Bosch* and noted that an agency's routine practice of using certain evidence in reaching its decision does not eliminate the requirement that the evidence relied on be introduced by the party bearing the burden of proof. *Bosch*, 339 Ill. App. 3d at 539, citing *Commonwealth Edison Co. v. Property Tax Appeal Board*, 115 Ill. App. 3d 371, 379, 450 N.E.2d 780 (1983).

Our decision in *Bosch* also rejected PTAB's arguments relating to its authority to take judicial notice of sales ratio studies. See *Bosch*, 339 Ill. App. 3d at 541 (courts may not take judicial notice of sales ratio studies which represent critical evidentiary material that goes to the heart of a contested issue); *Bosch*, 339 Ill. App. 3d at 541 (sales ratio studies are not within PTAB's specialized knowledge or expertise). Nor does PTAB's reliance on its legislative mandate to establish an "informal procedure" and "eliminate formal rules of pleading, practice and evidence" (35 ILCS 200/16—180 (2000)) allow PTAB to take judicial notice of evidentiary material not submitted by the party bearing the burden. PTAB contends, without citation to authority other than its own practices, that its "routine" use of sales ratio studies implements the informal procedure contemplated by section 16—180 of the Property Tax Code (Code) (35 ILCS 200/16—180 (West 2000)). We disagree.

PTAB stresses that its rules allow consideration of sales ratio studies in residential appeals. 86 Ill. Adm. Code §1910.50(c)(2) (Conway Greene CD-ROM 2002). PTAB maintains that the routine practice of taking judicial notice of sales ratio studies promotes consistency and fairness. PTAB also states in its brief that unrepresented taxpayers, both residential and commercial, may not be aware of the sales ratio studies or their significance and should have the benefit of their use. Setting aside a troublesome impression left by this argument—that PTAB is invested with an advocacy role for the taxpayer as part of its mandate—"routine practices" unchallenged in residential cases cannot be elevated to precedent in the appellate court where they have been challenged.

The argument also does not address an observation made in *Bosch*:

that PTAB continues to operate as if an objection by the Joint Committee on Administrative Rules (JCAR) to a proposed PTAB rule—a rule that did not distinguish between residential and commercial appeals—had not been made. It was clear from the administrative record that PTAB amended its proposed rule to address JCAR's objections. *Bosch*, 339 Ill. App. 3d at 545.

We must conclude that neither principles of administrative review nor PTAB's own rules grant PTAB the authority to do what it did here—remedy an alleged uniformity violation never raised by the taxpayer in the original appeal before the Board or the proceedings before PTAB.

We are not persuaded that an argument proposed by an *amicus* that section 8—40 of the Code (35 ILCS 200/8—40 (West 2000)) must alter our analysis of this case.

Section 8—40 incorporates the Code to implement review of final administrative decisions of the Department of Revenue. 35 ILCS 200/8—40 (West 2000). Final administrative decisions by the Department include assessment ratios and percentages promulgated for equalization purposes. See 35 ILCS 200/17—5 through 17—30 (West 2000). *Amicus* concludes from its reading of this section of the Code that sales ratio studies must be challenged, if at all, under administrative review when first promulgated. Absent an administrative review, the studies represent final binding decisions of an agency which must be accepted in subsequent litigation without challenge. We disagree.

*Amicus* overlooks that the Department's equalization factor is a legislative function to which different due process requirements apply. *Advanced Systems, Inc. v. Johnson*, 126 Ill. 2d 484, 506, 535 N.E.2d 797 (1989). The hearing and review contemplated in section 8—40 is an information gathering forum in pursuit of legislative facts and not a "contested case" as that term is defined in the Illinois Administrative Procedure Act (5 ILCS 100/1—30 (West 2000)). *Advanced Systems*, 126 Ill. 2d at 506. The absence of a "contested case" makes inapplicable the "[t]rial-type procedures, including the taking of evidence subject to cross-examination," required in a contested case where individual legal rights, duties or privileges are at issue. *Advanced Systems*, 126 Ill. 2d at 506; 5 ILCS 100/1—30 (West 2000). We do not believe that sales ratio studies, adopted in a legislative proceeding, must be accepted without challenge in a subsequent contested case, at the heart of which is the right to cross-examination.

The *amicus* argument also does not address the distinction between assessment and equalization. Assessment is the process of assigning value for tax purposes to individual parcels by the local assessment officials. *In re Application of Cook County Collector*, 133 Ill. App.

3d 208, 211, 478 N.E.2d 1119 (1985) (hereinafter *Johnson*). Equalization is a statutorily mandated function by which the Department adjusts the aggregate assessed valuations of property in each county so that in every county the ratio of aggregate assessed valuations to fair cash value is 100%. *Johnson*, 133 Ill. App. 3d at 211. *Equalization was not intended to adjust individual assessments. Johnson*, 133 Ill. App. 3d at 211. The Department's equalization function is not intended to be applied to achieve both a statewide balance and to adjust individual assessments. Our supreme court has addressed an analagous issue in a procedurally similar context involving standards promulgated by the Illinois Pollution Control Board.

In *Granite City Division of National Steel Co. v. Illinois Pollution Control Board*, 155 Ill. 2d 149, 613 N.E.2d 719 (1993), the distinction between standards promulgated by an administrative agency and the "calculated criterion" used to set those standards is clarified:

> " 'Once a standard has been established by Board regulations, and it has withstood any appeals, the validity of that number itself cannot be subsequently challenged in a contested case setting. However, an Agency calculated criterion can. Because criteria numbers will be generated without the benefit of statewide public participation, and because application *** necessarily require[s] the use of assumptions and professional judgment about which reasonable experts may disagree, the validity and correctness of application of a criterion must be reviewable by the Board on a case-by-case basis when the criterion is applied to a particular situation. ***' Board Order, at 30." *Granite City*, 155 Ill. 2d at 176.

We believe the distinction drawn in *Granite City* is persuasive when we consider a statewide equalization factor on the one hand and the sales ratio studies that underpin that factor on the other. The distinction is in accord with those drawn in cases such as *Airey v. Department of Revenue*, 116 Ill. 2d 528, 537-38, 508 N.E.2d 1058 (1987), and *Advanced Systems, Inc. v. Johnson*, 126 Ill. 2d 484, 496, 535 N.E.2d 797 (1989), on the one hand, and a contested case, *In re Application of Rosewell*, 106 Ill. 2d 311, 478 N.E.2d 343 (1985), on the other.

■ We conclude that the taxpayer here did not timely raise a uniformity challenge so as to justify the relief granted. We remand with directions to PTAB to apply the 38% level of assessment contained in the Cook County ordinance. We need not consider PTAB's use of sales ratio studies as authority to deviate from the

Cook County ordinance or PTAB's reading of the $2\frac{1}{2}:1$ constitutional ratio limitation in light of our conclusion.

Reversed and remanded with directions.

GREIMAN and McBRIDE, JJ., concur.